359 So.2d 965 (1978)
STATE of Louisiana, Appellee,
v.
Haywood NICHOLAS, Ulyses Smith, and Joseph Jones, Appellants.
No. 61045.
Supreme Court of Louisiana.
June 19, 1978.
*967 John M. Blanchard, Orleans Indigent Defender Program, New Orleans, for appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for appellee.
TATE, Justice.
The defendants were convicted of receiving stolen goods valued at $600 and sentenced to terms at hard labor: Nicholas, five years; and Smith and Jones, as multiple offenders, to enhanced terms of twenty years, La.R.S. 15:529.1.
The defendants appeal and argue various assignments of error. We find, however, that only Smith's Assignment 4 and the Nicholas-Smith-Jones Assignment 1 raise issues requiring discussion.
Smith Assignment 4
This assignment is based upon an objection during the hearing to impose enhanced punishment upon Smith, after his conviction, as a multiple offender. His counsel objected to the introduction of a document on the basis of hearsay and improper authentication.
*968 At the multiple offender sentencing hearing of defendant Ulyses Smith, Officer Bono, assigned to the Record Center, Identification Section of the New Orleans Police Department, was qualified as an expert in fingerprint identification. During the course of his testimony, Officer Bono was shown a document, labeled S-5, purporting to be copies of defendant Smith's arrest and conviction records and fingerprints from the Louisiana Department of Public Safety, Bureau of Identification. Officer Bono testified that he had received this document from that agency.
Beneath the copy of defendant's alleged fingerprints was the notation, "I certify that this is a true copy of this subject's record from the files of the Bureau of Identification." This notation was apparently signed by a "John R. Flowers" for a "Col. Donald Thibodaux, Superintendent" (typed name).
The purpose of introducing the state police records was apparently to prove the defendant's fingerprints corresponded: (a) with fingerprints on an arrest record (S-6) (received without objection) for commission of a Jefferson Parish prior offense (which was adequately proved by introduction of the convicting court's certified copy of the indictment and conviction (S-8)); and (b) with fingerprints of the accused taken during the multiple offender hearing.
In State v. Martin, 356 So.2d 1370 (La. 1978), we pointed out that, before documentary evidence may be received to prove the truth of its content, (a) if not admissible within an exception to the hearsay rule, it must be made admissible for that purpose by statute, and (b) it must be authenticated. See also State v. Tillman, 356 So.2d 1376 (La.1978).
A. Admissibility
The state contends solely that the state police record, if properly authenticated, is admissible by virtue of La.R.S. 15:529.1 F. This statutory authorization only permits proof of certain specific facts by certificate of the warden, etc., of a penitentiary under seal of his office for the purpose of proving prior offenses at a multiple-offender hearing. The statute does not, however, authorize such proof to be made by the superintendent of state police or of any non-penitentiary agency, as was attempted here.[1]
Nor can we find any other statutory authorization which permits proof of a fact to be made, independent of the rules of evidence, merely by a certified copy of police records. La.R.S. 15:581.16, for instance, permits introduction of certified copies of such state police records "in the same manner as the original might be." Likewise, La.R.S. 13:3711 similarly permits proof by certified copies of state agency records to be made "equally with the originals" i. e., if the originals would have been admissible.
Nevertheless, if the state police records are admissible, properly authenticated certified copies are admissible by virtue of these statutes.
For reasons to be noted, the state police fingerprint records are admissible under the traditional "public documents" exception to the rule against hearsay. This exception is historically based upon the principles of necessity and the probability of trustworthiness. 5 Wigmore on Evidence, Sections 1631, 1632 (Chadbourn Rev., 1974). The exception is founded primarily upon the presumption that an individual entrusted with a duty will do his duty and make a correct statement, 5 Wigmore, Section 1631 et seq.; McCormick, Evidence, Section 315 et seq. (2d ed. 1972); Pugh, Louisiana Evidence Law, pp. 476-77 (1974).
As these authorities note, the usual hearsay requirement that the declarant (here, the entrant or custodian) be shown to be unavailable, is dispensed with, largely because of the public inconvenience that would otherwise result from the disruption of public business to be occasioned by the *969 continual summoning of public officers to prove routine facts reflected by their records with a high probability of accuracy.[2]
As these authorities also indicate, however, the evidence so introduced must be admissible for some relevant and proper purpose, and the trial court must scrutinize such offerings so as to limit their introduction in accordance with this (especially in jury trial situations). Further, upon any indicia of unreliability being shown, the trial judge has the discretion to reject the evidence or to condition its admissibility upon further proof, and should exercise it, in order to assure that the probability of trustworthiness is so great as to justify the document's introduction as an official record under this exception to the hearsay rule.
The introduction of properly certified copies of fingerprints to prove the identity of an accused with a former offender, when maintained by an agency within its statutory duty to do so, is considered to be admissible within this "public document" hearsay exceptionthat is, the properly authenticated record is evidence of the fingerprint, and that it is maintained in the office under the name and sentence of the offender thereby shown. Wigmore, Sections 1635, 1678a. (Of course, the offeror must, by additional competent evidence, connect the fingerprints with the prior conviction and with the present offender, as was done here.)
The trial court therefore properly overruled the defendant's objection insofar as he complained that the document offered constituted hearsay.
B. Authentication
While the contested document does not constitute hearsay evidence, it is, nevertheless, inadmissible because not properly authenticated.
As we noted in Martin, "[A]n official document may belong to a class clearly admissible, but still the document actually offered must be authenticated as genuinely that which it purports to be." 356 So.2d 1374. Generally, if an official writing is proved to come from the proper office where such documents are kept, the document will be authenticated as genuine by the certification of the custodian because of the presumption that he will carry out his duty to receive, record, and certify only genuine official papers and reports. 7 Wigmore, Sections 2158-59; McCormick, Section 224.
As previously noted, since the original of the record was itself admissible, the copy of the state police record of the fingerprints is admissible in evidence if "certified by the superintendent of state police to be a true copy of the original." La.R.S. 15:581.16. See also La.R.S. 15:457, permitting certification by the officer who is the legal custodian thereof to any matter with the general powers entrusted to him.
In State v. Tillman, 356 So.2d 1376 (La. 1978), documents brought into court by a police officer assigned to the record room were held to be not properly authenticated, since they were uncertified and because it was not established by the testimony of an official custodian that the documents were genuine originals. We there recognized the principle of delegation of authentication (see Martin), but we noted that "it should clearly appear in evidence that the person authenticating an original by custody or certifying a copy has been entrusted with legal custody of the original document by the original official custodian." 356 So.2d 1378.
*970 Applying the above stated principles to the facts of the instant case, the attestation, "John R. Flowers [signed] for Col. Donald Thibodaux, Superintendent" does not satisfy authentication requisites.
According to this court's reasoning in Tillman and Martin, in order to be properly authenticated, a copy of a document presented in court must either be certified to by the officer who is the legal custodian of the document, or it must appear by clear evidence that the person certifying the document has been entrusted with legal custody of the original by the original custodian.[3] Likewise, the witness introducing the document in evidence must testify from personal knowledge as to the fact of its official custody, such as testimony as to from whom or from which office he received the document. Wigmore, Section 2158 B(b)(1).
Here, although there was an attempt to certify the documents, the certification failed to reveal that the certifier was either the legal custodian or the custodian's legally appointed delegate. If, for instance, Officer Bono had testified that John R. Flowers was the police officer in charge of the state police records, Flowers' certification would then be adequate authentication.
However, there is no evidence whatsoever as to Flowers' authority to certify the authenticity of the document on behalf of the superintendent.
Accordingly, the state failed to show proper authentication, and the trial court erred in overruling the defendant Smith's objection when this document was introduced to prove a prior conviction at the post-conviction enhanced punishment proceeding. Consequently, Smith's sentence must be vacated, and the case remanded (although his conviction is affirmed) to the district court for him to be re-sentenced in accordance with law.
Nicholas-Smith-Jones Assignment 1
This assignment is based upon the trial court's questions to the defendant Nicholas, which are alleged to have constituted a comment by the judge upon the evidence prohibited by La.C.Cr.P. art. 772. The trial judge overruled the defendant's objection.
The state argues that, since the defendants did not request an admonition or mistrial after their objection was overruled, they cannot complain on appeal of the alleged error. As we noted in State v. Hamilton, 356 So.2d 1360 (La.1978), this court is not barred for such reason from review of a timely objection which is overruled, since a request for such admonition or mistrial would be a vain and futile formality. (If the objection is sustained, however, the defendant cannot on appeal complain of the alleged error unless at the trial level he had requested and had been denied either admonition to disregard or a mistrial. La.C.Cr.P. art. 771.)
On the merits, the incident occurred during the testimony of the defendant Nicholas. Previously, the arresting officer had described the three defendants when arrested as wearing an orange jumpsuit, a yellow shirt, and a white T-shirt, respectively. A witness to the burglary in which the property was stolen likewise testified to such dress of the three participants in the burglary.
Nicholas took the stand to deny participation in the burglary. Although he had been identified as wearing an orange jumpsuit, he denied ever possessing one. He further testified that, at the time of arrest, Jones was wearing a green shirt and pants ("I can't rightly recall, but I believe it was a green outfit, if I'm not mistaken"), and concluded "I don't believe them."
By way of clarification, the trial court asked: "You don't believe what?" Nicholas answered: "That those colorsyou know, *971 the clothes they say [we were wearing] was accurate because I think he was all in green."
The trial court then asked, coming perilously close to a comment upon the witness's credibility, "But you're not sure, are you?" (Nicholas replied: "I don't know.") His counsel then objected to the court questioning the witness, without stating the ground therefor.
Insofar as the objection was arguably based upon the trial judge asking clarifying questions without commenting on the evidence, the objection lacks merit. See State v. Layssard, 310 So.2d 107 (La.1975); State v. Coffil, 222 La. 487, 62 So.2d 651 (1972); State v. Wilson, 204 La. 24, 14 So.2d 873 (1943). As McCormick on Evidence, Section 8, p. 12 (2d ed. 1972) notes: "The judge in his discretion may examine any witness to bring out needed facts which have not been elicited by the parties . . . [However, in those states where] the judge does not have power to comment on the weight of the evidence, the judge's questioning in jury cases must be cautiously guarded so as not to constitute an implied comment."
We do not find the question to constitute reversible errorprincipally because the ground for the objection stated at the trial did not complain of it as an implied comment on the evidence, but also because, in the factual context, it could possibly be considered a clarifying question rather than an improper comment upon the defendant's credibility.
Conclusion
The other assignments do not present arguably reversible error, nor do they involve legal issues either not governed by clearly applicable legal principle or else likely to arise in the future. We have discussed and disposed of them in an appendix attached hereto, which remains a public record of this court but which will not be published with this opinion.
Accordingly, for the reasons assigned, we affirm the convictions and sentences of the defendants Nicholas and Jones, and we affirm the conviction of the defendant Smith; however, as to the defendant Smith, we vacate the sentence imposed and we remand his case to the district court for re-sentencing in accordance with law.
CONVICTIONS AND SENTENCES AFFIRMED AS TO TWO DEFENDANTS; CONVICTION AFFIRMED AS TO THE THIRD DEFENDANT, BUT SENTENCE IS VACATED AND CASE REMANDED AS TO HIM FOR RE-SENTENCING IN ACCORDANCE WITH LAW.
SUMMERS, J., concurs.
DIXON, J., agrees as to Nicholas and Jones, but concurs as to Smith, disagreeing with the discussion as to Smith.
DENNIS, J., concurs and assigns reasons.
DENNIS, Justice, concurring.
I concur in the result reached by the majority but I respectfully disagree with the statement of the law regarding the admissibility and authenticity of official written records.
In its treatment of the admissibility issue the majority has created a dangerously broad exception to the hearsay rule not justified by our statutes or the treatise writers upon which it relies. In my opinion it opens the door too wide for the introduction of possibly unreliable evidence as to the identity of persons from the files of the keepers of secondhand information.
As the majority states, a common law exception to the hearsay rule exists for written statements of public officials made with a duty to make them, made upon firsthand knowledge of the facts. However, our legislature has not recognized such a general exception for official written statements. Although it has recognized specific exceptions for statements or records of certain public officials, an exception for state police records has not been enacted by the legislature.
Furthermore, the state police fingerprint card would not be admissible under even the liberal common law exception to the *972 hearsay rule for official written statements noted by the majority in footnote 2 of its opinion: "[T]he facts recorded must be within the personal knowledge of the certifying official (or a subordinate of his office) entrusted with the legal duty to make (and retain) such record based upon firsthand knowledge of the facts recorded." See, 5 Wigmore, Evidence, § 1635(3) (Chadbourn rev. 1974):
"Thus, for matters not occurring in the presence of the officer, his record or certificate is inadmissible, not only because in general a witness must have personal knowledge, but also because an officer's duty is usually concerned only with matters done by or before him. Tested by either principle, there is a shortcoming."
See also, McCormick, Evidence, § 316 (Cleary ed. 1972). In the instant case the fingerprint card contained information identifying a person with a particular fingerprint, but there was no showing that this information was within the personal knowledge of the certifying official or anyone within his office.
The copy of the fingerprint card on file with the Department of State Police which was introduced into evidence did not reveal under whose authority the fingerprints were taken. The card stated that the fingerprints were taken by "R. M. Gresham" but did not state for which official, if any, this individual took the fingerprints. The Bureau of Identification within the Department of State Police is authorized to maintain records transmitted to it by other state agencies (see La.R.S. 15:581 et seq.). In all likelihood the fingerprint card was such a record prepared outside the State police office and the information thereon linking a fingerprint with an individual was not within the personal knowledge of the certifying official or any of his subordinates.
I further respectfully disagree with the majority opinion's treatment of the authentication issue. Officer Bono could have provided evidence authenticating the document by testifying (1) that Col. Thibodeaux was its official custodian; (2) that custody of the original and authority to certify copies had been delegated to Flowers by Thibodeaux; and (3) that the certified copy in Bono's possession which had been given to him by Flowers was a true copy of the original in Thibodeaux's custody. The procedure outlined by the majority is sketchy and does not provide the detailed testimony required in authentication by testimony. See, State v. Martin, 356 So.2d 1370 (La. 1978); State v. Tillman, 356 So.2d 1376 (La. 1978).
NOTES
[1] While La.R.S. 15:529.1 F facilitates proof of necessary facts permitting enhancement of the punishment in a multiple-offender hearing, such facts may also be proved by other competent evidence. State v. Curtis, 338 So.2d 662 (La.1976).
[2] In addition to other limitations upon admissibility, however, the facts recorded must be within the personal knowledge of the certifying official (or a subordinate of his office) entrusted with the legal duty to make (and retain) such record, based upon first-hand knowledge of the facts so recorded. Wigmore, Section 1635; McCormick, Section 315. Thus, in the present instance, the conviction reports on the state police record are a second-hand compilation of data which, when relevant, are provable by official records of the agency with first-hand knowledge (i. e., the conviction trial court), but not (in the absence of statutory authorization) by the present state police document.
[3] In Tillman the relevant document was a copy which bore no certification that it was a true copy of the original, and the witness who brought the document was not its legal custodian or the custodian's delegate (as required for in-court authentication of uncertified documents, see 7 Wigmore, § 2158). In Martin, the documents were held to be properly authenticated because the evidence revealed that they were properly certified by a deputy sheriff, an authorized delegate of the custodian of the records, the sheriff.