510 So.2d 439 (1987)
STATE of Louisiana
v.
Kenneth HARRIS (Two Cases).
Nos. 86-KA-0536, 86-KA-0537.
Court of Appeal of Louisiana, First Circuit.
June 23, 1987.
*441 Bryan Bush, Dist. Atty., Baton Rouge by Jessie Bankston and Louis Daniel, Asst. Dist. Attys., for plaintiff-appellee.
Office of the Public Defender, Baton Rouge by Kathleen Stewart Richey and *442 Brady Jones, Public Defenders, for defendant-appellant.
Before EDWARDS, WATKINS and LeBLANC, JJ.
EDWARDS, Judge.
Kenneth Ray Harris was convicted after trial by jury for the armed robbery of Kurt Lee Salziger, a violation of LSA-R.S. 14:64. The court sentenced him as a third felony habitual offender to a term of sixty years at hard labor, without benefit of parole, probation, or suspension of sentence. Defendant appeals, urging seventeen assignments of error and briefing twelve. Assignments of error not briefed on appeal are considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.

FACTS
On May 10, 1985, Kurt Lee Salziger was fishing at City Park Lake when he was robbed by a black male who had been standing nearby talking to him for about five minutes. The man exposed a gun tucked inside his pants and asked Salziger if he knew anyone who might want to buy it. After saying no, Salziger was told to keep fishing, empty his pockets, and drop his wallet to the ground. The robber threatened to throw Salziger's keys in the lake if he screamed or shouted. After waiting a few moments, Salziger pursued the robber, but he got into a car which sped away. Salziger's keys and wallet, which contained about $20 and his press identification card, were stolen in the robbery.
About a month later, the police called Salziger after midnight and told him that they had arrested a man who had Salziger's press identification card. Salziger went to the scene of the arrest and identified the defendant as looking "just like" the man who robbed him. At the police station, Salziger again stated that the defendant looked like the robber. The next morning, he called the police and said, "that was definitely the man who held me up." Later that day, Salziger picked defendant's picture out of a photographic lineup. At trial, Salziger again positively identified defendant as the robber.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, defendant contends that the trial court erred in denying his motion to suppress the photographic lineup. Defendant claims that the lineup was suggestive because the orange "Sunkist" T-shirt he wore during the lineup was the same one he had on when Salziger saw him being arrested. Defendant also asserts that the lineup was suggestive due to Salziger's observations of him during his arrest and at the police station. He further argues that there was a likelihood of misidentification.
The one-on-one confrontation of defendant and Salziger at the scene of defendant's arrest, approximately one month after the offense, was not justified. Such identification procedures are only permitted when the accused is apprehended within a short time after the offense and is brought back to the scene of the crime for a prompt in-the-field identification. State v. Bickham, 404 So.2d 929 (La.1981). The one-on-one confrontation at the scene of defendant's arrest, coupled with the use of defendant's photograph depicting him clothed in the distinctive T-shirt, served to focus Salziger's attention on Harris. Thus, the foregoing identification procedures were unduly suggestive.
A determination that an identification procedure is suggestive "will not result in reversal of a conviction if it is demonstrated that the identification was reliable." State v. Brown, 481 So.2d 679, 685 (La.App. 1st Cir.1985), cert. denied, 486 So.2d 747 (La.1986). The factors to be considered in assessing reliability include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the witness' level of certainty; and (5) the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
*443 An application of the Manson factors to the instant case supports a finding that Salziger's out-of-court identifications were reliable and his in-court identification of defendant had an independent basis. The record shows that Salziger was robbed about 3:00 p.m. by a black male who had been standing nearby talking to him. The conversation lasted between three to five minutes, affording Salziger ample opportunity to view the robber. After the robbery, Salziger reported the crime to the police and described the robber as a black male, about six feet tall, slender, with medium length hair, and without scars or unusual facial features. The out-of-court identifications were made about a month after the offense and the in-court identification was made approximately six months later. Kurt Salziger was positive and unequivocal in identifying defendant as the robber. He stated he did not remember whether defendant was wearing the same clothes in which he was arrested in the photograph Salziger identified. In view of these facts, we find the out-of-court identifications to be reliable and the in-court identification to have an independent basis.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, defendant contends that the trial court erred in denying his motion to suppress physical evidence. He argues that the police lacked reasonable cause to make an investigatory stop of him and his brother, Darrell Harris; thus, the gun and Salziger's press identification card should be suppressed as fruits of an illegal stop. He alleges that the i.d. card was found in the trunk so that even if the investigatory stop was valid, a warrantless search of the trunk constituted an unconstitutional search.
The Fourth Amendment to the United States Constitution and Article I, Section 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by LSA-C. Cr.P. art. 215.1, as well as by both federal and state jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Payne, 489 So.2d 1289 (La.App. 1st Cir.), cert. denied, 493 So.2d 1217 (La.1986). Reasonable cause for an investigatory stop is something less than probable cause and is determined by examining whether the officer had sufficient knowledge of the facts and circumstances of the particular case to justify an infringement of the individual's right to be free from governmental interference. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Before the police can make an investigatory stop, they must have a reasonable belief that the person has been, is, or is about to be engaged in criminal activity. To determine whether the officer's conduct is reasonable, it is necessary to balance the need to search or seize against the harm of invasion. State v. Payne, 489 So.2d at 1289.
On June 12, 1985, shortly after midnight, the Baton Rouge City Police dispatcher sent Officer Victoria Smith to the 3000 block of Ontario Street, in reference to the sighting of a suspicious vehicle in the area. The dispatcher advised Smith that the residents of this high crime area were upset because a large red vehicle had been in the area for approximately an hour. Acting alone, Smith responded to the dispatch. At about 12:30 a.m., she arrived at the location and was flagged down by a black male who expressed concern and told her that a new red Oldsmobile had been in the area with the engine running and the lights turned off. He stated that the car was occupied by two black males, had remained stationary for about an hour, and then had been driven from the area in a westerly direction prior to Smith's arrival. Smith then proceeded in that direction in pursuit of the vehicle. When she located the vehicle, it had been parked in a lot against the rear of a washateria which concealed its license plate. The vehicle's lights were off, although its motor was running. Smith *444 turned on her spotlight and observed two persons inside the vehicle. Using a public address system, she told the occupants to exit the vehicle. After receiving no response, she walked to the passenger side and tapped on the window. The occupants were seated on the front seat and appeared to be unconscious or asleep. After gaining the attention of the passenger, Kenneth Harris, she told him to roll the window down and to put his hands on the dashboard so she could see them. She also ordered the driver, Darrell Harris, to place his hands on top of the steering wheel. They informed Smith that they were waiting for a friend who lived down the street, but they did not know his name or address nor could they provide Smith with the name of the street on which they were located.
Smith then asked Darrell Harris for some identification, which he claimed was in his back pocket. After exiting the car, Darrell then told Smith his identification must be inside the back seat area of the car. He reentered the car, knocking over an attache case between the back seat and the driver's seat. At that point, Smith observed two blue steel revolvers lying on the floorboard behind the driver's seat. When she saw Darrell Harris pick up a gun, she told him to freeze, pointed her revolver at him, and ordered him to drop the gun. After he complied, Smith made both men position themselves against a brick wall and called for assistance. As soon as other officers arrived, Smith searched defendant and his brother and placed them under arrest.
Based upon the totality of the circumstances presented in the instant case, we find that Officer Smith had reasonable cause to make an investigatory stop and question Darrell and Kenneth Harris. At the suppression hearing, Smith testified she was suspicious that the occupants of the car were contemplating committing a crime. The defendants were parked next to a closed washateria in a manner concealing the car's license plate. It was late at night, the car's engine was running, its lights were off, and the defendants had been in this high crime area for over an hour. Clearly, the totality of the circumstances convince us that Officer Smith had reasonable cause to stop and question the Harris brothers.
Generally, evidence seized without a warrant is inadmissible at trial. A well-established exception to this rule is that a search conducted incident to a lawful arrest is valid without a warrant. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Chimel states that an officer may search the person arrested and the space within his control for weapons. The area which may be searched encompasses containers from within which the person being arrested could gain possession of a weapon or evidence which he could destroy. State v. Drott, 412 So.2d 984 (La.1982). From the moment Darrell Harris picked up the gun, probable cause for his arrest existed. Thus, as an incident to his lawful arrest, the police officers could lawfully search the passenger compartment and any containers found therein. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).
Our jurisprudence indicates that the protection of police and others can justify protective searches when the police have a reasonable belief that the suspect poses a danger. We note that roadside encounters between police and suspects are specially hazardous and that danger may arise from the possible presence of weapons in the area surrounding a suspect. Thus, the search of a passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts," reasonably supports the officer's belief that the suspect is dangerous and may gain control of a weapon. Michigan v. Long, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983).
The circumstances of this case clearly justified Officer Smith in reasonably concluding that defendant posed a danger if he were allowed to remain in the car. The hour was late and the area was isolated. *445 Officer Smith was alone on patrol. Defendant was not arrested until after his brother reached for a gun. The subsequent search of the passenger compartment of the car, restricted to those areas over which defendant would generally have control, was permissible. Accordingly, the trial court properly refused to suppress the gun which was discovered during the search and identified by the victim as having been used in the perpetration of the instant offense.
The only items of physical evidence found as a result of the car's search in relation to the instant case were the gun and Salziger's press identification card. Smith testified that the gun was found inside the car on the floorboard behind the driver's seat. In regard to the place inside the car where the press identification card was found, Smith mistakenly testified at the motion to suppress hearing that it was found in the trunk of the car. In response to extensive questioning at trial, Smith stated that it was found within the passenger compartment of the car. She further testified that her police report indicated, although she did not personally recall, that Salziger's identification card had been found inside the attache case behind the driver's seat.
Regardless of the actual location of the identification card, the United States Supreme Court has held that unconstitutionally obtained evidence may be admitted at trial if it would inevitably have been seized by the police in a constitutional manner. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.E.2d 377 (1984). In the instant case, the police lawfully searched the car and attache case as a contemporaneous incident to defendant's arrest. In addition, once the police discovered the vehicle was stolen, they had the right to impound it and inventory its contents. Since the identification card would have been discovered inevitably in either circumstance, it was properly admitted into evidence by the trial court.

ASSIGNMENT OF ERRORS NUMBERS FIVE, FOURTEEN AND FIFTEEN
By means of these assignments, defendant contends that the trial court erred in denying his request that Darrell Harris be granted defense witness immunity. Although defendant concedes that the Louisiana Supreme Court has rejected a claim for defense witness immunity in State v. Mattheson, 407 So.2d 1150 (La.1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983), he urges this Court to recognize defense witness immunity as a constitutional right in Louisiana. He also argues that the trial court erred in sustaining the state's objection to the direct examination of Dorothy M. Bell, a defense witness, at the hearing on defendant's motion for new trial. He further argues that the trial court erred in denying his motion for a new trial based upon the denial of "judicial" immunity.
In State v. Lombard, 486 So.2d 106 (La.1986), the Louisiana Supreme Court reaffirmed its earlier ruling in State v. Mattheson, 407 So.2d at 1150, in which it rejected a claim for defense witness immunity. It noted that there is no statutory authority for a Louisiana court to grant a defense witness immunity. It also stated "that a trial judge properly rejects a claim for defense witness immunity whenever the witness for whom immunity is sought is an actual or potential target of prosecution." 486 So.2d at 109. In the instant case, Darrell Harris was without doubt an actual or potential target of prosecution. We find the trial judge correctly denied the defense motion.
At the hearing on defendant's motion for a new trial, defendant called Dorothy M. Bell as his witness. During her direct examination, defense counsel asked her whether defendant's brother, Darrell Harris, had made any statements to her in regard to the instant offense. The state objected to the question on the basis of hearsay. Defense counsel argued that the testimony being sought was pertinent to his motion for a new trial, in regard to his allegation that the trial court's refusal to grant Darrell Harris "judicial" immunity amounted to prejudicial error. He argued that any statement of Darrell Harris, to *446 which Bell might testify, would be offered not for the truth of the statement but merely for the fact the statement had been made. The trial court found that any testimony of Bell pertaining to statements made to her by Darrell Harris constituted hearsay and was irrelevant to his trial ruling denying defendant's request for defense witness immunity. In brief, defendant continues to assert that the purpose of the disallowed testimony of Bell was to lend support to his request for judicial immunity.
A witness is generally competent to testify that a statement was made to him so long as no attempt is made to vouch for its contents. State v. Watson, 449 So.2d 1321 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). Even assuming arguendo that the testimony sought to be elicited from Bell was for its non-assertive nature, i.e., without any attempt to vouch for the credibility of its contents, and thus not hearsay, we find no abuse of discretion by the trial court in disallowing the testimony as irrelevant to its trial ruling denying the request for use immunity. We have previously determined that that ruling was correct. Regardless of the substance of any testimony Bell might have given, the trial court lacked authority to grant the "judicial" immunity requested solely by defendant. See State v. Mattheson, 407 So.2d at 1150. Finally, because we find no merit to defendant's assertion that the trial court erred by denying the requested defense witness immunity, a new trial on that basis is not justified.
These assignments lack merit.

ASSIGNMENT OF ERRORS NUMBERS EIGHT, NINE, TEN, THIRTEEN AND SEVENTEEN
By means of these assignments, defendant makes a series of allegations of error relating to his adjudication as a third felony offender. He argues that the trial court admitted S-1, the "pen pack" into evidence without proper authentication as required by LSA-R.S. 15:529.1(F). Defendant asserts that S-2 through S-4, fingerprint cards evincing arrests, were brought to court by Linda Martin who was not the custodian of the records, and the state failed to lay the requisite foundation for admission of the records under the business records exception to the hearsay rule. Defendant also argues that Linda Martin was erroneously admitted by the trial court as an expert witness in fingerprint analysis. In conclusion defendant contends that, based upon the foregoing allegations of error, the trial court erred in finding him to be a third felony offender; and, thus, his sentence was excessive.

ADMISSIBILITY OF S-1
S-1, the "pen pack", includes defendant's criminal record, fingerprints, photograph, and the district court minute entry of his March 30, 1983, guilty pleas to simple burglary and simple burglary of an inhabited dwelling, as well as evidence of the date of his release from prison on July 6, 1983. S-1 bears the signature of Roxie H. Strickland, who signed the document in the capacity of custodian of records of the Louisiana Department of Public Safety and Corrections. More particularly, S-1 was properly certified by C. Paul Phelps as Secretary of the Louisiana Department of Corrections, in conformity with the provisions of LSA-R.S. 15:529.1(F). See State v. Lozier, 375 So.2d 1333 (La.1979); State v. Nicholas, 359 So.2d 965 (La.1978). Therefore, defendant's assignment on this issue is without merit.

QUALIFICATION OF EXPERT WITNESS
Before any witness can give evidence as an expert, his competency must have been established to the satisfaction of the court. LSA-R.S. 15:466. It is a well settled rule that a trial judge is vested with wide discretion in determining the competence of an expert witness. State v. Trosclair, 443 So.2d 1098 (La.1983), cert. denied, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984).
In the instant case, the trial court qualified state witness Linda Martin as an *447 expert in fingerprint identification. On the predicate, it was established that Martin had been employed by the Louisiana State Police Criminal Records Division for twelve years. During that entire period of employment, she had examined fingerprints and received on-the-job training in fingerprint analysis. She had attended a school, at Louisiana State University, taught by the FBI and pertaining to latent fingerprints. Additionally, she had qualified as an expert about four times in district court and a few times in city court. We find no abuse of discretion by the sentencing court in qualifying her as an expert witness in this case.

ADMISSIBILITY OF S-2, S-3 AND S-4
S-2, S-3 and S-4 are uncertified copies of fingerprints made at the time of arrests. The copies were produced in court by Linda Martin and were obtained from the records of the Louisiana Bureau of Criminal Identification and Information. They relate to defendant's March 30, 1983, convictions for simple burglary and simple burglary of an inhabited dwelling and the instant conviction. The copies were admitted into evidence by the sentencing court over defense counsel's objections of improper authentication and hearsay. We note that the state had not laid a proper foundation to show that the documents fell within the business records exception of the hearsay rule, and the documents were not certified in accordance with the requirements of LSA-R.S. 15:585. Hence, the sentencing court erred by admitting the documents into evidence. See State v. Smith, 447 So.2d 565 (La.App. 1st Cir.1984). However, the error was harmless since S-2 through S-4 were cumulative of other competent evidence introduced at the habitual offender hearing.
There is no merit to these assignments.

ERROR PATENT
We find defendant's adjudication as a third felony offender to constitute error patent on the face of the record. We note that, according to the bill of information charging defendant as a third felony offender and the evidence adduced at the habitual offender hearing, the state asserted that defendant had two convictions which could be used for enhancement, excluding the instant offense:
(1) March 30, 1983, guilty pleas to simple burglary committed on June 22, 1982; and simple burglary of an inhabited dwelling committed on July 22, 1982.
(2) February 7, 1984, guilty plea to third degree burglary in Kentucky, committed on November 26, 1981.
Based on the above listed predicate felony convictions, upon which the state relied, defendant's maximum habitual offender enhancement exposure herein was that of a second and not a third felony habitual offender. Our conclusion is based upon two grounds: (1) The March 30, 1983, guilty pleas may be considered only as a single felony conviction for purposes of enhancement under the provisions of LSA-R.S. 15:529.1. Convictions on more than one count entered on the same day should be treated as one conviction when applying the habitual offender statute. State v. Sherer, 411 So.2d 1050 (La.1982). (2) The Kentucky offense relating to the Feb. 7, 1984, guilty plea, was committed before the March 30, 1983, guilty pleas were entered. In order to make defendant eligible to receive habitual offender enhancement sentencing as to that offense, the offense would have had to have been committed after the March 30, 1983, guilty pleas were entered. See State v. Simmons, 422 So.2d 138 (La.1982).

ADJUDICATION AS HABITUAL OFFENDER
In accordance with our conclusion that defendant's maximum enhancement exposure was as a second felony habitual offender, we find that, although the sentencing court clearly erred in finding him a third felony offender, the evidence adduced at the enhancement hearing supports a finding that defendant qualified as a second felony offender. The evidence proved defendant's identity as the same Kenneth Harris previously convicted of simple burglary *448 and simple burglary of an inhabited dwelling on March 30, 1983, (considered a single conviction for enhancement) and the instant offense.
In addition to S-1, the certified "pen pack", the state introduced certified copies of the bills of information, S-7 and S-8, and the pertinent minute entry, S-9, and Boykin examination, S-10, relating to the March 30, 1983, guilty pleas to the predicate conviction. The "pen pack" included fingerprints pertaining to the March 30, 1983, guilty pleas. Linda Martin fingerprinted defendant in open court, compared these fingerprints with the fingerprint records contained in the "pen pack" and determined they were of the same person. Detective Greg Phares testified defendant was the same Kenneth Harris tried for the instant offense. Dorothy M. Bell, an employee of the Louisiana Department of Corrections, identified Kenneth Harris in court at the multiple offender hearing. She testified that she supervised him in regard to his placement on probation for a Kentucky conviction, as well as in regard to his simple burglary conviction in East Baton Rouge Parish. She further testified that defendant is the same individual for whom she prepared a presentence investigation report for the instant armed robbery.
Because the evidence only supports defendant's adjudication as a second felony offender, his sentence must be vacated and the matter remanded to the district court for resentencing in accordance with the views expressed herein. Hence, defendant must be resentenced pursuant to the provisions of LSA-R.S. 15:529.1(A)(1).

ASSIGNMENT OF ERROR NUMBER 16
By means of this assignment, defendant contends that the trial court erred in denying his motion for post verdict judgment of acquittal. He argues that if the gun, the victim's press identification card, and the photographic lineup identification had been suppressed, the evidence would have been insufficient to find him guilty of the instant offense.
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. State v. Garcia, 483 So.2d 953 (La. 1986) In our discussion of assignments of error one and two, we found no merit to defendant's contentions that the trial court erred in denying the motions to suppress the photographic lineup and physical evidence. Accordingly, defendant's reliance on those same contentions in regard to this assignment serves him no purpose.
More particularly, viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found that the state proved the essential elements of armed robbery and defendant's identity as the perpetrator of that crime beyond a reasonable doubt.
This assignment lacks merit.
CONVICTION AFFIRMED, SENTENCE VACATED, AND REMANDED FOR RESENTENCING.