577 So.2d 1193 (1991)
STATE of Louisiana, Appellee,
v.
Richard M. LEE, Appellant.
No. 22333-KA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1991.
*1194 J. Spencer Hays, Bossier City, for appellant.
*1195 William J. Guste, Jr., Atty. Gen., James M. Bullers, Dist. Atty., David Griffith, Asst. Dist. Atty., for appellee.
Before SEXTON, NORRIS and VICTORY, JJ.
VICTORY, Judge.
Richard M. Lee, charged with aggravated burglary and armed robbery but convicted of aggravated burglary and first degree robbery by a jury on February 7, 1990, appeals his concurrent twenty year hard labor sentences, one of which is without benefit of parole, probation or suspension of sentence. We amend and affirm as amended.

FACTS
On June 2, 1989, Deatra Collins, at her home in Bossier City, put her two children to bed and fell asleep watching television in her living room. Around 3:00 a.m. she was awakened to find a nude man sitting on her back with a knife pointing in her side. At first she tried to escape, but the assailant grabbed the sheet on which she was lying and tried to choke her.
Realizing her efforts were futile, she stopped resisting and the assailant bound her with the sheet so that she could hardly see or speak. Using a brassiere, he tied her hands behind her back. In the process of tightening her bonds, the assailant put his knife in a position where Ms. Collins was able to see it from under the veil of the sheet. She stated the knife was about twelve inches long and double edged. Ms. Collins never saw the assailant, but said he had a low, scratchy voice and knew he was a man.
The assailant rummaged through the house in the dark, opening and closing doors and cabinets. After being questioned about its location, Ms. Collins told him where he could find her purse. All remained quiet until the assailant took Ms. Collins into her bedroom, threw her down on the bed and pulled off her pajama bottoms. The baby, hearing its mother's muffled screams for help, began to cry. Thereafter the assailant locked Ms. Collins in her bedroom closet and tied the door shut before leaving. The house was undisturbed except for about $120.00 missing from Ms. Collins' purse and a brassiere left by the assailant. Ms. Collins managed to get loose and go to her sister's house two houses away. The police responded to the call almost immediately.
Detective Fred Gregory from the Bossier City Police Department inspected the crime scene and found no sign of forced entry. He took a statement from Ms. Collins, who listed several people she thought might have committed the crime, including the twenty-nine year old defendant, Richard Lee, a man she had met on three occasions through mutual friends. She did not know the defendant personally, had never seen him outside these three occasions and stated he had never been in her home.
Crime Scene Investigator William Ray, called in to dust for fingerprints, found a latent palm print on the inside window sill which he compared to the prints of suspects named by the victim. Ray found defendant's prints matched those found at the crime scene.
On June 7, 1989, defendant was arrested. A warrant was issued two days later to search his residence for the knife described by Ms. Collins, but it was never found. Police never determined who owned the brassiere and no other physical evidence was obtained from the scene.
At trial the State's prime evidence consisted of the defendant's palm print found inside Ms. Collins' house. The defense called Blaine Loughlin, defendant's friend, and Trudy Lee, defendant's mother, as alibi witnesses in an attempt to establish that defendant was home when the crime was committed in the early morning hours of June 2. James Lee, defendant's brother, testified he saw defendant on June 2 about 8:00 a.m. when they went fishing, and noticed nothing peculiar about him.

ADMISSIBILITY OF FINGERPRINTS
Investigator Ray, accepted by the trial court as a fingerprint expert, testified he matched the latent palm print found on the window sill to defendant's inked prints, Exhibit *1196 S-2, on file at the Bossier City Police Department. Over defense counsel's objection that the foundation for admissibility of the inked prints was lacking because Ray had not personally taken the inked prints from defendant, the trial court admitted Exhibit S-2 into evidence.
The initial consideration of admissibility is whether the fingerprints fall within an exception to the hearsay rule.
Historically, the public records exception is based on the principles of necessity and the probability of trustworthiness and is founded primarily on the presumption that an individual entrusted with a duty will do his duty and make a correct statement. State v. Nicholas, 359 So.2d 965 (La.1978).
The Louisiana Code of Evidence, effective January 1, 1989, governs the admissibility of evidence in this case. Art. 803 of the Code provides in relevant part:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * * * * *
(8) Public records and reports.
(a) Records, reports, statements, or data compilations, in any form, of a public office or agency setting forth:
(i) Its regularly conducted and regularly recorded activities; [or]
(ii) Matters observed pursuant to duty imposed by law and as to which there was a duty to report;

* * * * * *
Every criminal justice agency, such as the Bossier City Police Department, is burdened with the duty to collect the fingerprints of persons lawfully arrested for felonies, and to submit them to the Louisiana Bureau of Criminal Identification. LSA-R.S. 15:590-592. Refusal of any person being booked for a crime to submit to fingerprinting is a misdemeanor. LSA-R.S. 14:133.2.
Consequently, Exhibit S-2, the defendant's inked prints, falls within subsection (a)(ii) of the public records exception found in C.E. Article 803(8) because the Bossier City Police Department had a duty to take the prints and report them.
Further, fingerprints taken from persons being booked are activities "regularly conducted and regularly recorded" in records at the police department. Therefore, the fingerprint card would also qualify under subsection 803(8)(a)(i) of the Louisiana Code of Evidence. In State v. Nicholas, supra, and State v. Woodard, 387 So.2d 1066 (La.1980), both pre-code cases, the Louisiana Supreme Court held fingerprints on file with a police agency fell within the public documents exception to the hearsay rule. Similarly, in United States v. Dancy, 861 F.2d 77 (5th Cir.1988), the Fifth Circuit held that fingerprints on file from a police agency qualified as an exception to the hearsay rule under Federal Rule 803(8), worded much like the Louisiana rule. See Comment (b) of the Comments to Exception (8), La.C.E. Art. 803.
The second consideration in determining admissibility of the inked fingerprints is authentication.[1] Louisiana C.E. Art. 901 on authentication provides in relevant part as follows:
A. General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
B. Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication *1197 or identification conforming with the requirements of this Article:
* * * * * *
(4) Distinctive characteristics and the like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.
* * * * * *
(7) Public records or reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept."
* * * * * *
(Emphasis added.)
The fingerprint card, Exhibit S-2, is the original fingerprint card. It purports to bear the signatures of "Ricky Lee," the person being printed, and "C. Benefield," the official taking the prints. On its face the exhibit indicates the prints were taken on June 8, the day after defendant was arrested for these crimes. Additionally, the fingerprint card form, printed by M.L. Bath Company, is marked as "BCPD form no. 85", clearly referring to "Bossier City Police Department." The fact that it is an original card, bearing original signatures, and having other distinctive characteristics, such as the M.L. Bath form number for the Bossier City Police Department and the date taken, provides additional reasons why the court could find Exhibit S-2 is, in fact, what the state claims it to be, i.e., an original inked impression of the defendant's fingerprints taken by the Bossier City Police Department in connection with the defendant's arrest for this incident. C.E. Article 901 A and B(4).
Although little testimonial evidence was adduced at trial concerning Exhibit S-2, Investigator Ray stated the prints of the Bossier City Police Department were maintained under his supervision and that of three other technicians. C.E. Article 901B(7) allows authentication by evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept. Ray's testimony proves Exhibit S-2 was a writing authorized by law to be recorded and filed at the Bossier City Police Department. Compare State v. Tillman, supra.
This evidence is sufficient to support a finding that Exhibit S-2 was properly authenticated under the Louisiana Code of Evidence.[2] Therefore, the court was not in error by admitting it into evidence as an exception to the hearsay rule.

SUFFICIENCY OF EVIDENCE
Defendant contends there is insufficient evidence to uphold his conviction. The sufficiency of evidence standard in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), provides that the reviewing court must determine whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Thus, irrational decisions to convict will be overturned, while rational decisions to convict will be upheld and the fact-finder's discretion will be impinged only to the extent necessary to guarantee the fundamental protection of due process. The same standard applies even though the evidence considered is circumstantial. State v. Eason, 460 So.2d 1139 (La.App.2d Cir.1984), writ denied 463 So.2d 1317 (La.1985). Where the key issue is identity of the perpetrator, the state is required to negate any reasonable probability of misidentification *1198 in order to carry its burden of proof. State v. Smith, 430 So.2d 31 (La.1983).
The existence of the defendant's palm print on the inside window sill of Ms. Collins' residence is a very damning piece of evidence. The evidence proves the defendant had not been in Collins' home before June 2, 1989. The alibi defense was weak at best. Therefore, the jury could have reasonably reached the conclusion that the defendant was the assailant in the victim's home on the night of the crime. We hold the evidence was sufficient to support the jury's findings of guilt.

EXCESSIVE SENTENCE
Defendant next contends the sentences he received were excessive. In determining whether a sentence is excessive, the test imposed by the reviewing court is twopronged. First, the record must show the trial court took cognizance of the factors set forth in C.Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Tully, 430 So.2d 124 (La.App.2d Cir.1983), writ denied 435 So.2d 438 (La.1983).
The trial court need not articulate every aggravating and mitigating circumstance outlined in C.Cr.P. Art. 894.1, but the record must reflect the court adequately considered those guidelines in particularizing the sentence to the defendant. State v. Cunningham, 431 So.2d 854 (La.App.2d Cir.1983), writ denied 438 So.2d 1112.
Important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and likelihood of rehabilitation. State v. Hudgins, 519 So.2d 400 (La.App.2d Cir.1988), writ denied 521 So.2d 1143.
After determining whether the provisions of C.Cr.P. Art. 894.1 have been complied with, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983).
Constitutional excessiveness, a violation of La.Const.1974, Article 1, § 20, is implicated when the sentence imposed is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied 435 So.2d 433.
In the instant case the trial court noted this twenty-nine year old defendant's previous felony conviction of possession of a controlled dangerous substance where he received a probated two year hard labor sentence, and further pointed out he was divorced, had never graduated from high school, and had a sketchy employment record. Considering the brutality of what the defendant did, we cannot say that these 20 year concurrent sentences are grossly out of proportion to the severity of the crimes such as to shock our sense of justice, although such sentences might be held excessive for aggravated burglary and/or first degree robbery under different circumstances. We hold the trial judge adequately complied with sentencing guidelines and did not impose excessive sentences.

ERROR PATENT
The trial judge failed to give defendant credit for time served. In accord with our earlier opinion of State v. Sweet, 575 So.2d 937 (La.App.2d Cir.1991), we recognize the failure to give credit as an error patent. Such an allowance is mandatory with no discretion. C.Cr.P. Art. 880. Accordingly, we amend defendant's sentences to allow credit for time served.

*1199 CONCLUSION
We affirm defendant's convictions, and his sentences are amended in accordance with this opinion to give credit for time served.
CONVICTIONS AFFIRMED; SENTENCES AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] In State v. Tillman, 356 So.2d 1376 (La.1978), a pre-code case, the supreme court in denying admission of prints held "it should clearly appear in evidence that the person authenticating an original by custody or certifying a copy has been entrusted with legal custody of the original document by the original official custodian."

In State v. Woodard, supra, another pre-code case, the supreme court allowed a file fingerprint into evidence where the supervisor of the identification and records division testified he had not taken defendant's prints and could not say whether the prints were taken on the stated days for the listed offenses. Woodard is factually distinguishable because the defendant was printed in court during a recess.
[2] The identical federal provision on authentication was discussed in United States v. Lopez, 758 F.2d 1517 (11th Cir.1985), where an expert witness testified fingerprints on a bag containing cocaine were defendants. Defendant objected to admission of the fingerprint card contending the government failed to offer any evidence identifying the source of the prints. The prosecutor advised the court that the F.B.I. had obtained a court order to take the prints, and the prints on the card matched the evidence. The court admitted the card into evidence holding there was ample circumstantial evidence to show defendant's prints were on the card.