Judge Daniel L. Dysart
M.K., who appeared with counsel, was adjudicated delinquent for a violation of La. R.S. 14:62, simple burglary, at an adjudication hearing on April 17, 2017. The trial court imposed a one year sentence of incarceration, suspended, and imposed a one year term of active probation with special conditions. M.K. filed a motion to reconsider his sentence, which was denied. He now appeals his adjudication, arguing that the trial court erred in allowing exhibits from a Crime Lab Report to be admitted *956 into evidence, and using the testimonial hearsay contained in that evidence as substantive evidence of guilt. For the reasons that follow, we affirm the ruling of the trial court.
BACKGROUND:
On December 21, 2016, Ms. Rebecca Schultz, was notified on her telephone that an active alarm had sounded at the house she was building at 8830 Cohn Street in New Orleans. The house was located about nine blocks from Ms. Schultz's residence. The alarm company also called her, and she asked that it notify the police. Ms. Schultz proceeded to Cohn Street, and called 911 on the way. She also called a neighbor across from the Cohn Street house, and he met her at the house. Ms. Schultz testified that she poked at the open rear door with her foot, but did not enter. The neighbor did enter and reported that no one was in the house.
Upon entering, Ms. Schultz noticed broken glass on the living room floor and that a window had been shattered. She noted that deck railings on the back of the property were broken, and that the window screen had been removed and was in the backyard. There was what appeared to be blood on the wall above the broken window, on the window frame and a bloody handprint on the back door.
Ms. Schultz testified that the same window had been broken by a thrown rock prior to this event. She chose not to notify the police, intending to repair the window. On this date, however, the glass was completely shattered. She stated that large appliances had been installed, but the house was not furnished. Ms. Schultz did not know M.K., and had not given him permission to be in the house.
New Orleans Police Officer Maurice Stewart testified that he was dispatched to the Cohn Street address for a possible burglary. He met with Ms. Schultz and entered the house, observing broken glass from a window on the floor, blood stains on the wall and around the broken window frame. The exit point appeared to be the open back door. The officer testified that he noted broken wooden railings on the back deck and window screens on the ground in the backyard. On cross-examination, Officer Stewart stated that there were bloody fingerprints throughout the living room.
The State called Officer Joseph Pollard, a latent print examiner with the New Orleans Police Department, who was accepted as an expert in fingerprint identification. He testified that his job duties include lifting fingerprints and identifying them, although he was not the officer who lifted the prints in this case. Instead, Officer Pollard was called upon in this case to link the prints to a suspect. After explaining the process of identifying finger prints, Officer Pollard determined that the prints belonged to M.K.[1]
Detective Stephen Williams was called by the State. He testified that he investigated the burglary at the Cohn Street house. His involvement in the case began upon receiving a fingerprint result sheet from the fingerprint unit. Over the defense's hearsay objection, the detective explained the process of beginning his investigation through use of the fingerprint report. He determined that M.K. was a suspect in the burglary and obtained an *957 arrest warrant, and placed it on file with the National Crime Information Center.
Following closing argument by the defense, the trial court found M.K. guilty as charged, relying on the evidence that his fingerprints were found inside and outside of the burglarized home.
On June 19, 2018, the trial court imposed a sentence of one year incarceration, suspended, with one year active probation.
DISCUSSION:
M.K. argues that the trial court erred in admitting into evidence latent fingerprints that were allegedly lifted from the crime scene without the testimony of the technician who lifted the prints at the scene to corroborate that the prints were lifted from inside the Cohn Street house. Additionally, M.K. argues that the trial court erred in relying on the fingerprint evidence in adjudicating M.K. delinquent.
The standard of review for cases involving the Confrontation Clause of the United States Constitution is de novo. State v. Mullins, 14-2260, p. 2 (La. 1/27/16), 188 So.3d 164, 167.
In his first assignment of error, M.K. asserts that the trial court erred in allowing the exhibits (his fingerprints) from the Crime Lab Report to be admitted into evidence, and subsequently using the inadmissible exhibits as evidence of his guilt.
The basic premise of M.K.'s argument is that he should have had the opportunity to confront the technician who lifted the prints from the crime scene. He claims that the report of the technician amounts to testimonial evidence, and that therefore he should have been given the opportunity to question the technician. Relying on Crawford v. Washington, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), he argues that the admission of "[t]estimonial statements of witnesses absent from trial" is only allowed when the declarant is unavailable, and "only when the defendant has had a prior opportunity to cross-examine." Further, M.K. stresses that the Supreme Court declined to create a "forensic evidence" exception for Confrontation Clause cases. Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009).
To properly analyze M.K.'s argument, the distinction between testimonial and non-testimonial evidence must be examined. In State v. Grimes, 11-0984 (La.App. 4 Cir. 2/20/13), 109 So.3d 1007, this Court considered whether supervisors who had not performed DNA analyses could testify as to the actual analysts' findings contained in reports. This Court relied on Williams v. Illinois , 567 U.S. 50, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012), in which the Court held that when not offered as truth but only offered as a basis for an expert's conclusions, the (forensic) reports are not hearsay (non-testimonial). Id., 11-0984, p. 26, 109 So.3d at 1021, citing Williams, 567 U.S. 50, 132 S.Ct. at 2227. However, when reports are offered into evidence, they are admissible solely as the basis for the expert's opinion that there was a DNA match between the sample provided to the analyst and the defendant's DNA, but not for the fact that the DNA sample used by the analysts came from the victim. Id. The U.S. Supreme Court reasoned that in a bench trial, the judge could distinguish between testimonial and non-testimonial uses of the evidence, and accept the evidence only as the basis for the expert's opinion.
Here, the defense did not object to Officer Pollard using the latent prints lifted as a basis for matching those prints to those of M.K. The objection raised was that the information contained on the latent print card indicated some prints were lifted from outside the house and some were lifted from inside. There was no witness *958 who testified as to the location from which the prints were lifted. In that respect, M.K. argues the latent print card became testimonial evidence, and he had no opportunity to cross-examine the person who lifted the prints.
The State argues that both Grimes and Williams are distinguishable from the facts of this case. It states that the only issue in this case is whether the exhibit containing the actual fingerprints themselves, which indicates the location of collection, is testimonial. The State relies on State v. Arita, 04-39, p. 13 (La.App. 5 Cir. 3/1/05), 900 So.2d 37, 45, which held that latent fingerprints lifted from a crime scene are not testimonial in nature and thus not hearsay evidence.
The State also relies on State v. Bolden, 11-2435 (La. 10/26/12), 108 So.3d 1159, which held that a DNA profile created prior to the defendant becoming a suspect in the case is non-testimonial in nature. The Court noted that in Williams , the U.S. Supreme Court stated:
No error under the Confrontation Clause occurs when a DNA expert testifies that in his or her opinion the DNA profile developed from a sample taken from defendant matches the DNA profile developed by other, non-testifying technicians from biological samples taken from the victim of a sexual assault if: the tests on the victim's samples were conducted before the defendant was identified as the assailant or targeted as a suspect.
Bolden , 11-2435,p. 4, 108 So.3d at 1161-62, citing Williams , 567 U.S. at 81-83, 83-84, 132 S.Ct. at 2242, 43 (Alito, J., joined by Roberts, C.J. and Kennedy, J.). Justice Alito further noted that the primary purpose of the lab reports was not to accuse the petitioner or to create evidence for trial. Rather, the primary purpose was to catch the criminal who had committed the underlying crime. The evidence was collected prior to the petitioner being suspected or arrested for the crime. Bolden, supra , citing Williams, 567 U.S. at 84-85, 132 S.Ct. at 2244.
Here, the latent prints were lifted from the Cohn Street address prior to M.K. becoming a suspect or being arrested for the burglary.
Also, the State argues that the prints were lifted by the police investigating the burglary, and thus were collected in the normal course of business prior to the defendant being identified.
In Arita, 04-39, p. 11-12, 900 So.2d at 44, the court explained that law enforcement has a duty "to seek out and obtain fingerprint evidence as part of its criminal investigations. Also, latent fingerprints are obtained and recorded as part of the department's regularly conducted and recorded activities." Accordingly, the fingerprints are included in La. C. Evid. art 803(8)(a)(i) and 803(8)(a)(ii). Fingerprints collected as part of the normal course of business do not fall under any of the exclusions listed in Article 803(8)(b). The Arita court, cited State v. Lee, 577 So.2d 1193 (La.App. 2 Cir. 1991), which relied on State v. Nicholas, 359 So.2d 965 (La. 1978) and State v. Woodard, 387 So.2d 1066 (La. 1980),[2] in which the Louisiana Supreme Court held that "fingerprints on file with a police agency fall under the public documents exception to the hearsay rule. 04-39, p. 12, 900 So.2d at 44. Also see , United States v. Dancy , 861 F.2d 77 (5th Cir. 1988).
We agree with this line of cases. The prints obtained at the crime scene were collected as part of the normal course of the investigation of the burglary, for the *959 purpose of identifying the burglar. Officer Pollard used those latent prints to develop a suspect in the case, and he authenticated the fingerprints at trial as the ones he tested in relation to the subject burglary. We therefore find that the latent prints were collected in the normal course of the investigation and were part of the NOPD's regularly conducted and recorded activities. They were thus properly admitted into evidence.
As we find the fingerprints were properly admitted into evidence, we find no error on the part of the trial court in relying on the evidence to adjudicate M.K. delinquent. The ruling of the trial court is affirmed.
AFFIRMED

At the end of testimony, the State requested a recess to allow the technician who lifted the prints to arrive. The trial court denied the request for a recess and instructed the State to give its closing argument. The State refused, indicating it would take a writ to this Court. The trial court allowed the defense to give its closing argument, although the State had not officially rested its case. No writ was lodged with this Court.

Both cases pre-date the Louisiana Code of Evidence.