399 So.2d 1168 (1981)
STATE of Louisiana
v.
Franklin Edward DAVIS
No. 80-KA-2489.
Supreme Court of Louisiana.
May 18, 1981.
On Joint Motion for Rehearing/Clarification June 16, 1981.
*1169 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John Sturgeon, Dist. Atty., Glenn B. Gremillion, Asst. Dist. Atty., for plaintiff-appellee.
Jerry B. Daye, Ferriday, for defendant-appellant.
JASPER E. JONES, Justice Ad Hoc.[*]
Defendant, Franklin Edward Davis, was charged by Grand Jury indictment on August 17, 1978, with the crime of second degree murder of Norah Wright, a/k/a as Norah Rice, in violation of LSA-R.S. 14:30.1. On March 8, 1979 defendant was convicted by a jury of twelve. On March 20, 1979 defendant was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence for forty years.
The state adduced the following facts at trial:
In the early morning hours of July 30, 1978 defendant entered Rice's Grocery and Bar in Clayton, Louisiana. Shortly after his arrival defendant became involved in a heated argument with Norah Rice, owner of the establishment. The brief confrontation was witnessed by most of the ten or twelve customers who were in the establishment. Defendant left the establishment immediately after the argument and some of the customers heard him say he would be back. As defendant left the area outside the bar one witness heard him say that he would return with his "shit". (This witness said this word was a local expression for gun.). About twenty minutes after the defendant left, the customers heard a gunshot and saw Norah Rice slumped over bleeding from the head. He died later that day from a bullet wound to the brain. There was one witness who testified he saw defendant in the area not far from where the shot was fired about two or three minutes before he heard the gunshot. This witness stated that defendant did not have a gun. Defendant testified he went home immediately upon leaving the bar and went to bed. He denied he returned to the bar and shot the victim. The police were called and upon their arrival at the scene interviewed the witnesses and learned of the earlier altercation between the victim and the defendant. The officers determined that the shot which struck the victim had been fired from outside the building through a window.
The officers proceeded to defendant's house which was a short distance from the bar and arrested defendant. Defendant was asleep upon a couch in one room of his two-room house at the time of his arrest.
*1170 Zane Ellis who lived in the house with defendant was asleep on another couch in the same room with defendant at the time the arrest was made. Simultaneous with the arrest the officers seized a .22 rifle which was lying on a bed in the room adjoining the one in which defendant was sleeping. The rifle belonged to Zane Ellis.
Defendant, on appeal, relies on five of his nine assignments of error for reversal of his conviction and sentence. He abandoned four of his five assignments of error in brief. Because we find an error complained of in Exception # 9 requires reversal, we pretermit consideration of the other errors complained of.
On November 1, 1978 defendant filed a "Motion For Bill of Particulars" wherein he "moved to require the State of Louisiana" to disclose to him a description of "all documentation or other exhibits" which it was to use in evidence "for his examination and use."
The answer to the Motion for Bill of Particulars dated November 22, 1978 stated that the state had a diagram of the scene of the crime, a .22 rifle, alleged to be the murder weapon, and clip, a .22 caliber bullet removed from the head of the victim, a statement taken from the defendant, and his rap sheet.
During the trial of defendant on March 7, 1979 the state called Bob Bruce as its last witness before resting its case in chief. This witness was the fingerprint expert for Concordia Parish Sheriff's Department. He testified that sometime during the day of the early morning shooting he examined the .22 rifle which was seized in defendant's home for the purpose of determining if there were any fingerprints on it. He stated there were no prints found on any part of the rifle except on the removable bullet clip. He photographed a palm print found on the clip. The expert obtained a palm print from defendant's hand which he also photographed. He compared the print found on the clip with the print taken from defendant's hand and concluded defendant had placed the print on the bullet clip. The expert testified the palm print had been on the clip no longer than 24 hours. The defendant objected to the fingerprint exhibits and testimony relating to them for the reason the state failed to disclose these exhibits which had been in the possession of the state since July 30, 1978, in its answer to the Bill of Particulars filed November 22, 1978.
The trial court stated the evidence was not prejudicial to defendant and overruled the objection.
The following provisions of our criminal procedure discovery statute authorized the defendant to obtain from the state the fingerprint exhibits:
LSA-C.Cr.P. art. 718"Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies of portions thereof, which are within the possession, custody, or control of the state, and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at the trial, or
(3) were obtained from or belong to the defendant.
The court may determine whether evidence is subject to the provisions of Paragraph (1) hereof by in camera inspection."
LSA-C.Cr.P. art. 719"Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph, or otherwise reproduce any results or reports, or copies thereof, of physical or mental examination, and of scientific tests or experiments, made in connection with or material to the particular case, that are in the possession, custody, control, or knowledge of the district attorney and intended for use at trial. Exculpatory evidence shall be produced under this article even though it is not intended for use at trial."
*1171 We construe defendant's Motion for a Bill of Particulars as a motion for discovery contemplated by the cited Articles as it requests the identification of the exhibits which are in possession of the state intended to be used by the state as evidence and requests that these exhibits be furnished to him for his examination and use.
The state failed to comply with the disclosure requirements of the cited discovery provisions because it failed to disclose to defendant that it had fingerprint exhibits which it intended to use as evidence at trial and failed to make these exhibits available for his examination and reproduction.
The quoted criminal discovery provisions were enacted by the legislature in 1977. In State v. Pool, 361 So.2d 1202 (La.1978), this court construed the state's failure to comply with the discovery provisions contained in the 1977 legislation as analogous to the state's giving inaccurate or misleading answers in response to a motion for a bill of particulars.
If a defendant is misled by an answer to a bill of particulars relative to the state's possession of an oral inculpatory statement[1] and is lulled into a misapprehension of the strength of the state's case and suffers prejudices when the statements are subsequently introduced at trial, basic unfairness results which constitutes reversible error. State v. Boothe, 310 So.2d 826 (La.1975); State v. Jenkins, 340 So.2d 157 (La.1976); State v. Sharp, 338 So.2d 654 (La.1976); State v. Hatter, 350 So.2d 149 (La.1977); State v. Pool, supra.
In Pool, supra, the court found that the state's failure to disclose fingerprint tests which were later proved at trial was not reversible error because the defendant suffered no prejudice. Pool was convicted of receiving a stolen automobile and his fingerprints taken from the car were not disclosed by the state. Defendant was arrested driving the stolen car by three officers. The eyewitness testimony of these officers conclusively placed defendant in the stolen car, and the evidence that defendant's fingerprints were found in the car added nothing to the state's case.
Here the state failed to comply with the disclosure requirements of the quoted discovery provisions and if defendant has been prejudiced by the state's failure to disclose he is entitled to a reversal. State v. Meshell, 392 So.2d 433 (La.1980).
The state's case against defendant is based entirely upon circumstantial evidence. Defendant denies he shot the victim. He denied in a statement taken on the day of the shooting which was admitted into evidence that he had ever handled or shot the gun which was seized at the time of the arrest. The state established that the bullet which was removed from the victim's head was fired from a .22 rifle that was constructed in the same manner as the seized gun, and that this rifle was a relatively uncommon gun. Joe Summerville, a state's witness, testified that the gun was fired in target practice at the home of defendant and Zane Ellis on the afternoon before the killing, by Zane Ellis, to whom the gun belonged, and three of his friends. Defendant was not present when the gun was fired. Summerville testified at the conclusion of the target practice Zane Ellis laid the gun upon the bed in his house. This bed where Ellis put the gun may have been the same bed from which it was taken at the time it was seized. Summerville was at Norah Rice's establishment the morning of the killing and left the place between the time that defendant left and the shooting occurred.
The non-disclosed fingerprint evidence which tended to establish that defendant had handled the clip of the alleged murder weapon within 24 hours of the lifting of the print from the clip, was an important link in the state's circumstantial evidence case *1172 against the defendant. No other prints were found on the gun and the inference which the jury may well have found from this evidence is that defendant left the print on the clip when he put the cartridge into it with which he shot the victim. This fingerprint evidence was the only evidence that directly linked Zane Ellis's rifle to the defendant who at trial reiterated his earlier statement to the sheriff's deputy that he had never fired the gun and admitted only having picked up the gun at a time remote from the date of the murder for the purpose of placing it on a gun rack.
Defendant contends that had the state disclosed the fingerprint exhibits to him he would have secured his own fingerprint expert to examine and evaluate the prints.
In the case of Barnard v. Henderson, 514 F.2d 744 (1975), a decision of this court[2] affirming a trial ruling which denied a defendant's request to have an alleged murder weapon examined by an expert of his selection was reversed. The case involved a murder case based upon circumstantial evidence where the state had produced expert testimony that the murder bullet had been fired from a pistol traced to defendant's possession. Defendant desired to have his expert examine the gun and the bullet. The court there recognized that if defendant had been given the opportunity to secure his own expert "he may have been able to shake the identification testimony (i. e., identifying the bullet with the gun) of the state's experts." This court quoted with approval retired Associate Justice Barham's dissent in Barnard, supra:
".. the only means by which the defendant can defend against expert testimony by the State is to offer expert testimony of his own." Id. at 746.
The court stated:
"Fundamental fairness is violated when a criminal defendant on trial for his liberty is denied the opportunity to have an expert of his choosing, bound by appropriate safeguards imposed by the Court, examine a piece of critical evidence whose nature is subject to varying expert opinion." Id. at 746.
If defendant here had secured a fingerprint expert he may have acquired evidence with which he could have refuted or weakened the state's damaging fingerprint evidence. At the very least such an expert could have advised defendant that the fingerprint evidence was conclusive proof that defendant had handled the gun within 24 hours of the killing.
In the case of State v. Meshell, supra, this court held that the state's failure to disclose its possession of the defendant's rap sheet in response to defendant's discovery motion in compliance with the provisions of LSA-C.Cr.P. art. 717, was reversible error because defendant was prejudiced by the nondisclosure. The state did not furnish defendant with a copy of his rap sheet until the state rested its case. The court stated defendant was denied the right to prepare his defense based upon an expectation that the state would produce the rap sheet at trial. The court further found the non-disclosure denied defendant an opportunity to evaluate his prosecution in light of possession of the rap sheet by the state.
"If the state had furnished defense counsel with a copy of defendant's rap sheet prior to trial, counsel might have attempted to negotiate a plea bargain by pleading his client guilty." Id. at 435.
Defendant here was denied the opportunity to examine the expert's fingerprint evidence which is authorized by LSA-C.Cr.P. arts. 718 and 719 because the existence of the evidence was never disclosed to him. Defendant did not have an opportunity to prepare a defense to the state's fingerprint evidence. Even if defendant had not secured the expert which he now says he would have secured if he had known of the fingerprint exhibits, had the disclosure been properly made he could have evaluated the strength of the state's case in light of the damaging fingerprint evidence and perhaps entered into a plea bargain which *1173 could have resulted in a sentence substantially less severe than the one he received as result of his conviction of second degree murder.
We conclude that defendant was prejudiced by the state's violation of the discovery statute. Accordingly, the defendant's conviction and sentence are reversed and set aside and the case is remanded to the district court for further proceedings in accordance with law.
NOTES
[*] Judges Pike Hall, Jr., Charles A. Marvin, and Jasper E. Jones of the Court of Appeal, Second Circuit participated in this decision as Associate Justices Ad Hoc, joined by Justices Pascal F. Calogero, Jr., James L. Dennis, Fred A. Blanche, and Harry T. Lemmon.
[1] LSA-C.Cr.P. art. 716(B)"...

Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made."
[2] St. v. Barnard, 287 So.2d 770 (La. 1973). This case was decided prior the 1977 legislation providing our present broad criminal discovery rules.