454 So.2d 398 (1984)
STATE of Louisiana
v.
Norwood JACKSON.
No. KA-1745.
Court of Appeal of Louisiana, Fourth Circuit.
July 31, 1984.
*399 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Joanne C. Marier, Asst. Dist. Atty., New Orleans, for plaintiff.
Ralph Capitelli, Capitalli, Bencomo & Wicker, New Orleans, for defendant.
Before REDMANN, C.J., and GARRISON and BARRY, JJ.
BARRY, Judge.
A jury found Norwood Jackson guilty of simple burglary, La.R.S. 14:62, and he was sentenced as a multiple offender to five years at hard labor with credit for time served. We find error in the first of three assignments and reverse.
Defendant contends the trial judge erred by denying his motion for a mistrial when it was discovered during trial that a State witness had identified him in a one-person photographic show-up, despite prior representations of the State to the contrary. Defendant maintains the use of the one photo show-up was impermissibly suggestive, and that the State's misrepresentation impaired counsel's ability to prepare an adequate defense, resulting in substantial prejudice to the defendant.
Prior to trial defense counsel filed a "Motion for Bill of Particulars, Inspection and Discovery" and a "Motion to Suppress the Identification" of the witnesses. The State represented that only one of its two witnesses, Frank Braud, had identified the defendant in a photographic line-up. The State specifically denied that its other witness, Whitney Jones, participated in any identification procedure.
At trial Whitney Jones testified he had observed the defendant enter the backyard of a residence located at 1021 Bordeaux Street and then exit minutes later carrying a box of power tools. On cross-examination, it was revealed that, contrary to the earlier representation of the State, Jones had made a prior identification of the defendant from a photograph. Outside the presence of the jury, Jones testified that at a court appearance some two months earlier,[1] an unidentified male had shown Jones a two-view mug shot of the defendant retrieved from the D.A.'s file and asked him if that photo depicted the defendant.[2] Defendant *400 moved for a mistrial which was denied.[3]
The due process standard for reviewing photographic identification procedures consists of a two-part test. The court must determine whether the photographic display was impermissibly suggestive, and if so, whether the procedure created a likelihood of misidentification. State v. Prudholm, 446 So.2d 729 (La.1984); Manson v. Brathwaite 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
In the present case, the witness was shown a two-view mug shot of the defendant from the D.A.'s file. There can be little doubt that this procedure was impermissibly suggestive. The display of a single photograph of the defendant rather than an array of photographs depicting different individuals has repeatedly been held to be improper. U.S. v. Williams, 616 F.2d 759 (USCA 5th Cir.1980); U.S. v. Cueto, 611 F.2d 1056 (USCA 5th Cir.1980); Hudson v. Blackburn, 601 F.2d 785 (USCA 5th Cir.1979).
As noted by the U.S. Supreme Court in Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), reliability is the linchpin in determining the admissibility of identification testimony. Thus, in deciding whether to suppress an identification, the court must weigh the reliability of the identification against the corrupting influence of the suggestive identification. State v. Davis, 409 So.2d 268, 270 (La.1982); State v. Stewart, 389 So.2d 1321 (La.1980). The factors to consider in determining the reliability of an identification include the opportunity of the witness to view the defendant at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the defendant, the level of certainty demonstrated by the witness at the identification, and the length of time between the crime and the identification. Manson v. Brathwaite, supra.
Applying these factors we are unable to conclude that the identification procedure did not create a substantial likelihood of misidentification. From the in-court testimony of the witness and the in-chamber colloquy between the witness and the trial judge, we are able to ascertain the following. On October 1, 1982, the witness observed an individual he alleged to be the defendant enter the backyard at 1021 Bordeaux Street. The trial judge concluded, and we agree, that the witness had the opportunity to view the defendant over a period of minutes from a variety of views. However, the trial judge apparently did not take into consideration the fact that the witness did not at any time provide a description of the defendant, other than to state at trial that he saw him in the yard and identified him in the mug shot. He gave no detailed description of the defendant and did not otherwise attempt to show the accuracy of his observation. The witness admitted he did not know the defendant and had not seen him before his casual observation on October 1, 1982.
Furthermore, the trial judge did not ascertain the certainty of the witness' identification at the time of the photographic show-up, but only considered the witness' identification at trial. The trial judge did not take into account the fact that this second identification was vitiated by the fact that only two months earlier, the witness was shown a mug shot of the defendant in such a suggestive manner as to indelibly etch the defendant's features in his mind.
*401 Finally, and most dispositive of this issue, is the fact that the photographic identification took place some eight months after the crime. This substantial lapse of time, coupled with the relatively brief period of observation and the absence of a physical description, casts grave doubt upon the reliability of the in-court identification.
This is not a situation where the witness had the opportunity to view the defendant on a number of occasions, State v. Douglas, 389 So.2d 1263 (La.1980); State v. Johnson, 389 So.2d 1318 (La.1980); over a long period of time, State v. Prudholm, 446 So.2d 729 (La.1984); State v. Winn, 412 So.2d 1337 (La.1982); State v. Stewart, 389 So.2d 1321 (La.1980); or at a close proximity, State v. Prudholm, 446 So.2d 729 (La.1984); State v. Neslo, 433 So.2d 73 (La.1983), State v. Stewart, 389 So.2d 1321 (La.1980). Furthermore, eight months is a long time to remember a face. This length of time was acknowledged in the seminal case of Neil v. Biggers, 409 U.S. 188, 201, 93 S.Ct. 375, 383, 34 L.Ed.2d 401 (1972) in which the U.S. Supreme Court explained that a lapse of seven months between the crime and the identification is in most cases a "seriously negative factor". The lapse of time in this case was eight months.
Weighing these indicia of reliability against the corrupting effect of the one photograph show-up, we conclude there was a substantial likelihood of misidentification. Accordingly, the trial judge committed reversible error in admitting the identification testimony of Whitney Jones.
In connection with this same assignment of error, defendant further argues that the failure of the State to disclose the fact of defendant's prior identification by Whitney Jones caused substantial prejudice which constitutes reversible error. We agree.
Pursuant to La.C.Cr.P. articles 716 et seq., defense counsel filed a "Motion for Bill of Particulars, Inspection and Discovery" requesting the following information: "Was the defendant identified by anyone as (sic) to be the perpetrator of the offense charged? If so, was the identification made in a line-up or by use of photographs, or any other method?" On May 24, 1983, at a joint hearing on the discovery motion and the motion to suppress, the State, after being specifically questioned on the issue, represented that its witness, Whitney Jones, had never participated in any formal identification procedure.
Trial commenced on August 3, 1983. During cross-examination, Whitney Jones testified that, contrary to the representations of the State, he had made a prior identification of the defendant from a two-view mug shot he had been shown during a court appearance some two months earlier. Defendant moved for a mistrial, arguing that his due process rights were violated because the prior identification lulled him into a misapprehension of the strength of the State's case, and resulted in the inadvertant revelation during cross-examination of inculpatory evidence and otherwise impaired his ability to prepare an adequate defense. The trial judge denied the motion.
The purpose behind the discovery rules of the Louisiana Code of Criminal Procedure is the elimination of unwarranted prejudice which could arise from surprise testimony. State v. Mitchell, 412 So.2d 1042 (La.1982); State v. Toomer, 395 So.2d 1320 (La.1981).
La.C.Cr.P. art. 729.5(A) provides the sanctions a court may impose when a party violates a discovery order:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed or enter such other order, other than dismissal as may be appropriate.
Although under La.C.Cr.P. art. 729.5(A) the State's failure to comply with discovery *402 procedures will not automatically demand a reversal, if the defendant suffers prejudice as a result of the failure to disclose, he is entitled to a reversal. State v. Mitchell, 412 So.2d 1042 (La.1982); State v. Davis, 399 So.2d 1168 (La.1981).
Under the facts of the present case, it is clear that the State, however unintentionally, provided an inaccurate and misleading response to a specific discovery request. As a direct result, the defendant was effectively deprived of the opportunity to prepare a defense to the identification evidence. Had the defendant known of the existence of the prior identification, it is arguable that a different trial strategy would have been employed. At the very least, the defendant could have successfully attacked the identification at a pre-trial motion to suppress. Instead, the defendant was unwittingly lead into bolstering the State's case by revealing the fact of a prior identification to the jury, a fact which did considerable prejudicial harm to his defense.
In the case of State v. Davis, 399 So.2d 1168 (La.1981), the Louisiana Supreme Court held that the State's failure to disclose its possession of fingerprint evidence in response to defendant's discovery motion was reversible error. In its opinion, the Court explained that as a result of the State's nondisclosure, the defendant was denied an opportunity to prepare a defense to the State's fingerprint evidence and was thereby deprived of a substantial right: the right to prepare a defense. The Davis case is analogous to the present situation. In this case the State's misrepresentation effectively precluded the defendant from mounting an attack on the identification; an identification which proved to be an important link in the State's case.
This Court cannot sanction misrepresentation, no matter how unintentional. This is especially true where the misrepresentation impinges upon a substantial right of the accused: the right to prepare a defense. Accordingly, we find that the trial judge abused his discretion in failing to grant a mistrial. State v. Mitchell, 412 So.2d 1042 (La.1982); State v. Meshell, 392 So.2d 433 (La.1980). We must reverse.

DECREE
For the reasons assigned, defendant's conviction and sentence are reversed and this case is remanded to the district court for further proceedings in accordance with the law.
REVERSED:
REMANDED.
REDMANN, C.J., dissents with reasons.
REDMANN, Chief Judge, dissenting.
The in-chambers colloquy with witness Jones included: "[By the trial judge] Q. Your identification of this man as the person who was in that back yard, how are you doing that; are you identifying him off of that picture or off of seeing him that day in the back yard? A. I'd seen him that dayI'd seen him that day in the yard and then I identified him at that picture. Q. Mr. Capitelli, if you want to ask him any questions about anything, you can. [By Mr. Capitelli] Q. That one photograph with two views is what you were talking about; that was the picture you were shown? A. Yes. Q. That's the first time you made an identification? A. (Witness nods head affirmatively.) Q. And that was about two months ago when you came to court; is that right? A. Yeah. [By the judge] Q. My question is: Are you identifying him now, because of that picture, or because you saw him in the back yard on the day you saw him with the tools? A. I'd seen him in the back yard, I'd seen him in the side yardI'd seen him outside in the back yard."
The trial judge thereupon ruled: "I don't see how even if he would have testified at the motion to suppress identification hearing, how this changes anything. He's made a good in-court identification and I'm satisfied that the identification is not tainted in any way. He had a very good look at the defendant over a matter of minutes. He got the same from all different views, on many occasions, from the time the defendant *403 was allegedly in the yard. I can't see how any prejudice really attaches as a result of him having looked at the picture."
Because the trial judge has primacy in understanding and evaluating live witness testimony, we should accept the judge's reasonable conclusion that the witness's words as reported in the transcript mean that the witness made his identification from seeing defendant at the time of the offense rather than from later seeing the mug shot. The witness's saying, for example, that "the first time [he] made an identification" was when he saw the picture means, in context, that the witness first applied his independent memory of the burglar to the picture (upon seeing it), and not that he did not have a memory until he saw the picture. The witness's testimony supports the trial judge's conclusion that he identified defendant from independent recollection, and thus the possibility of taint from an improper pre-trial identification was excluded; State v. Johnson, 389 So.2d 1318, 1320 (La.1980).
Arguing additionally that the state's failure to make proper discovery requires reversal, defendant cites State v. Vaccaro, 411 So.2d 415 (La.1982) (failure of the state to disclose alleged exculpatory statements); State v. Davis, 399 So.2d 1168 (La.1981) (failure to disclose an inculpatory statement used at trial); and State v. Meshell, 392 So.2d 433 (La.1980) (failure to provide defendant's rap sheet). But our case is not like Vaccaro, where evidence material and favorable to defendant was suppressed; or Davis, where defense counsel was lulled into a misappreciation of the state's case; or Meshell, where a crucial decision of whether to put defendant on the witness stand was affected. In our case, defense counsel would presumably have done nothing different at trial had he known of witness Jones's having seen the mug shot, save possibly not ask about itan insubstantial matter in view of the witness's positive testimony of a long period of observation of defendant at the time of the crime. Under our circumstances, there is no "reasonable possibility that the constitutional error complained of might have contributed to the conviction," State v. Gibson, 391 So.2d 421, 427 (La.1980).
NOTES
[1] Jones testified only that he identified the defendant at a court appearance some two months earlier. This approximate date coincides with the hearing on the Motion to Suppress at which Jones was present but did not testify.
[2] Although Jones could not name the man who asked him to identify the defendant's mug shot, it is not disputed that the photo came from the D.A.'s file.
[3] In denying the defendant's motion for a mistrial, the trial judge stated:

"I don't see how even if he would have testified at the motion to suppress identification hearing, how this changes anything. He's made a good in-court identification and I'm satisfied that the identification is not tainted in any way. He had a very good look at the defendant over a matter of minutes. He got the same from all different views on many occasions, from the time the defendant was allegedly in the yard. I can't see how any prejudice really attaches as a result of him having looked at the picture. If he didn't I'm still not convinced that the District Attorney's office or that any law enforcement agency was concerned in the showing of this photograph in order to taint any identification."