YELVERTON, Judge.
Defendant, Curtis Lee Swayze, plead guilty on November 15, 1988, to armed robbery, a violation of La.R.S. 14:64. The guilty plea took place during the middle of a trial, defendant reserved his right to appeal a ruling denying a motion for mistrial and other alleged errors. He was sentenced to serve 99 years at hard labor with the Department of Corrections without benefit of parole, probation, or suspension of sentence. Defendant appeals on the basis of seven assignments of error.
An armed robbery was committed at approximately 3:00 a.m. on June 28, 1987, at the Charter Food Store in Vidalia, Louisiana. Michael Eagle, the Charter Food Store employee on duty at the time, was alone in the store, when a black man entered the store and asked to buy liquor. Eagle refused to sell the liquor because it was illegal to sell liquor on Sunday morning. The man left but almost immediately returned and selected a bag of chips and “some type of frozen ice cream”, and placed them on the counter before Eagle.
He then requested from Eagle a carton of cigarettes, which were in a part of the store not accessible to the public. After obtaining the carton of cigarettes, Eagle turned and handed it to the “customer”, who “had a gun pointing right in my face.” The gunman forced Eagle to lie on the floor and “ball up.” He also had Eagle handcuff himself to the knob of a door. After rifling the cash register and petty cash box, the robber left.
Eagle was able to reach a telephone. Doing so, he called the police. Investigator *251 Ricky Williams questioned Eagle and took his statement, and Officer Wesley Bruce lifted latent fingerprints from the carton of cigarettes.
Williams testified that Eagle described the robber to him as a black male taller than himself, who “had mean looking eyes or vicious looking eyes.” Eagle was asked to look through some mug books, but did not find the perpetrator of the armed robbery. Several months later, Williams received information that defendant may have been involved in the crime in question. Obtaining fingerprints on the defendant from the Natchez Police Department, Williams gave them to Officer Bruce to compare with those fingerprints lifted from the carton of cigarettes at the scene of the crime. Evidence concerning the fingerprints is not included in the transcript submitted to this Court, but presumably the prints matched because defendant was charged.
Defendant was charged with armed robbery by bill of information on February 2, 1988, seven months after the crime. His trial commenced November 14, 1988. During the trial, under cross-examination, Michael Eagle revealed that earlier that day he had been shown a photograph of a man by the district attorney whom he identified as the robber. Eagle made an in-court identification of the defendant as the robber and as the man in the picture he was shown. Eagle was shown only one photograph by the district attorney. Counsel for the defendant motioned for a mistrial, which was denied. Following a recess, defendant withdrew his previous plea of not guilty and entered a plea of guilty, reserving his right to appeal the ruling denying his motion for a mistrial.
The defendant urged seven assignments of error. Because we find that assignment of error No. 2 has merit, and that a mistrial should have been ordered, we need not consider the remaining assignments.
By this assignment defendant contends that the trial court erred in denying his motion for a mistrial because the victim was allowed to make an in-court identification of the defendant as the robber shortly after the victim had been shown a photograph of the defendant by the prosecuting attorney.
Due process prohibits the conducting of an identification procedure in a manner which is unnecessarily suggestive and conducive to irreparable mistaken identity. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In testing the constitutionality of an out-of-court identification, the suggestiveness of the identification procedure itself must be first examined. State v. Guillot, 353 So.2d 1005 (La.1977), writ denied 367 So.2d 864 (La.1979). One-on-one lineup procedures are not favored. State v. Newman, 283 So.2d 756 (La.1973), cert. denied 415 U.S. 930, 94 S.Ct. 1442, 39 L.Ed.2d 489 (1974). Display of a single photograph of a defendant rather than an array of photographs depicting different individuals has repeatedly been held to be improper. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); U.S. v. Williams, 616 F.2d 759 (5th Cir.1980), cert. denied 449 U.S. 857, 101 S.Ct. 156, 66 L.Ed.2d 72 (1980); State v. McLeland, 456 So.2d 633 (La.App. 2d Cir.1984), writ denied 461 So.2d 312 (La.1984); State v. Jackson, 454 So.2d 398 (La.App. 4th Cir.1984).
In this case the victim, Michael Eagle, was called into the district attorney’s office and shown a photograph of the defendant, which lay on the desk with other case evidence, including a layout of the Charter Food Store that defendant was charged with robbing. The district attorney asked Eagle if he recognized the person in the photograph and if he had ever seen the man in the photograph before. Eagle identified the man in the photograph as the person who robbed him.
This is a classic instance of an unnecessarily suggestive photographic lineup procedure. Eagle was shown a single photograph under circumstances that would facilitate his associating the person in the photograph with the crime in question. He was shown no other photographs, nor was a live lineup conducted. State v. McLeland, supra, and State v. Jackson, supra, are similar to this case.
*252 Although the identification procedure in this case was impermissibly suggestive, this alone does not indicate a violation of due process rights. The impermissibly suggestive identification procedure must create the likelihood of misidentification. Exclusion of the in-court identification is not required, therefore, unless the out-of-court impermissibly suggestive display created a substantial likelihood of misidentifi-cation. Manson v. Brathwaite, supra; State v. Guillot, supra.
Reliability of an identification is tested by examining each of five factors set forth in Neil v. Biggers, supra, which were reiterated in the Mamón case, supra, and adopted by the Louisiana Supreme Court in State v. Guillot, supra. Addressing each of these factors as it specifically applies to this case reveals the following:
1. The Opportunity to View:
The entire encounter between the victim and the armed robber lasted no more than five minutes. The robber wore no mask or disguise, it should be noted. In State v. Harris, 510 So.2d 439 (La.App. 1st Cir.1987), writ denied 516 So.2d 129 (La.1987), the court found that a 3 to 5 minute conversation afforded the victim “... ample opportunity to view the robber.” There were no other customers at the store at the early hour in question and the victim was in close proximity to the robber. Also, because there was only one robber, the victim’s attention was undivided and focused on only one person.
2. The Degree of Attention:
The victim can in no way be designated as a casual observer. Moreover, although the victim was forced to lie on the floor, and by his own testimony covered his face with his hands during part of the time in question for fear of being shot, he had opportunity to observe the robber for some time before the commencement of the robbery. Before brandishing a gun and commencing the robbery, the robber had entered the store and attempted to purchase liquor. When the victim refused to sell him liquor, he left, then almost immediately reentered the store and selected other items to buy, finally asking the victim for a carton of cigarettes. Until he handed the robber the cigarettes and saw the pistol, the victim was not aware of the robber’s intentions; therefore, nervousness or stress would not have affected his powers of observation during the pre-robbery period. Also, it goes without saying that one’s degree of attention can be heightened, as well as diminished, by stressful situations.
3.The Accuracy of the Description:
According to the testimony of Officer Darden, the victim could only identify the robber as a black man with a gun. The victim admitted under cross-examination that he could not describe the robber well enough for the police artist to form a composite. He also testified that he had never seen the robber before that night, nor had he seen him since that night until he was shown the photograph on the morning of the second day of the trial. The victim at trial, though, testified that the robber was a tall, thin black man, had a calm voice, was not nervous in demeanor, was well-groomed and neat-looking (apparently, as opposed to how defendant looked at trial), and wore one glove. The victim was particularly impressed by the robber’s expression, the look in his eyes, which he remembered as “... very, very cold and businesslike [sic]”. In Harris, supra, the court found that this factor had been met on what seems from the text of the opinion to be a similar degree of specificity, or lack of, as to a physical description of the robber. However, in Harris, supra, “[t]he out-of-court identifications were made about a month after the offense and the in-court identification was made approximately six months later.” Harris, at 443. Also, the out-of-court identifications, although suggestive, were a one-on-one physical confrontation and a subsequent physical lineup in which the defendant was presented to the victim as he had been dressed at that prior improper physical confrontation. Harris, at 442.
*253 4. The Witness’s Level of Certainty:
The witness made a positive identification. He was certain, when asked on cross-examination, that he was identifying the defendant as the robber and not as the man in the photograph he had been shown earlier.
5. The Time between the Crime and the Confrontation:
The robbery in question was committed on June 28,1987; the victim was shown the photograph in question on November 15, 1988. In Neil v. Biggers, supra, the U.S. Supreme Court explained that a lapse of seven months between the crime and the identification was in most cases a seriously negative factor. Here, there is a lapse of almost 17 months. In Jackson, supra, and McLeland, supra, lapses of 8 and 10 months, respectively, were found to be negative factors. In Hudson v. Blackburn, 601 F.2d 785 (5th Cir.1979), cert. denied 444 U.S. 1086, 100 S.Ct. 1046, 62 L.Ed.2d 772 (1980), a lapse of 6 months was not considered a seriously negative factor in light of the "... other indicia of reliability [which] persuades the court that no mistake was made in this case.” Hudson, at 789.
A thorough search of the jurisprudence has revealed no case supporting the State where there was such a great lapse of time between the commission of the crime and the out-of-court identification. The in-eourt identification is further vitiated by the out-of-court suggestive photographic display because both identifications occurred on the same day. Also, the victim had never seen the robber before the robbery or after the robbery (June 28, 1987) until the day he made the identifications (November 15, 1988). Furthermore, he seems to have been unable to give a detailed physical description of the robber. Officer Darden testified that the victim only described the robber as a black male with a gun. Darden could not remember the victim describing to him the robber’s height, weight, complexion, “... or anything that might would [sic] enable you to locate this individual.”
We find that the photographic identification procedure was impermissibly suggestive and that it created a substantial likelihood of misidentification.
On this record, we are unable to find that the error was harmless beyond a reasonable doubt. Article 921 of the Louisiana Code of Criminal Procedure reads: “A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.” In State v. Narcisse, 512 So.2d 565 (La.App. 3 Cir.1987), the court appraised the issue of harmless error and the harmless review standard as follows:
The Supreme Court examined art. 921 and the issue of harmless error in State v. Gibson, 391 So.2d 421 (La.1980). The court recognized that La.Const.1974, art. 5, § 5(C) limits appellate jurisdiction to questions of law in criminal matters. As a result, the court stated, when examining the effect of an error by a trial court, an appellate court is not free to substitute its determination for that of the trier of fact as to what would or should have been decided in the absence of the error. The court went on to adopt the federal harmless error rule as stated and applied by the U.S. Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The court stated that this rule would necessarily be followed in cases where a federal constitutional right of the defendant was impinged by the erroneous action of the trial court and that it would be used as a guideline in cases involving only errors of state law. The Gibson, supra, court adopted the Chapman test as follows: (1) “whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction”, and (2) “the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt.” Gibson has since been followed by the courts of this state in determining whether or not an error was harmless. See: State v. Green, 493 So.2d 1178 (La.1986); State v. Banks, 439 So.2d 407 (La.1983); State v. White, 399 So.2d 172 (La.1981); *254 State v. Smith, 489 So.2d 255 (La.App. 5th Cir.1986); State v. Phillips, 471 So.2d 319 (La.App. 4th Cir.1985).
In the present case, although defendant’s trial did not proceed to completion, because following Michael Eagle’s inadmissible identification defendant changed his plea to a guilty one, the issue is whether “... there is a reasonable possibility that this tainted evidence might have contributed to defendant’s conviction....” State v. Nar-cisse, supra, at 571 (La.App. 3 Cir.1987). From the partial record submitted to this court, it is not entirely clear what other evidence had been introduced before the trial was discontinued. At the very least, it is probable that there was evidence proving that defendant’s fingerprints had been found on the carton of cigarettes handed to the robber by the victim, Michael Eagle. However, we ha\e difficulty believing that identification testimony by the only eyewitness could be “... merely cumulative or corroborative of other testimony adduced at trial....” State v. Spell, 399 So.2d 551 (La. 1981); State v. Wells, 538 So.2d 1053 (La.App. 4 Cir.1989).
For these reasons, the trial court’s denial of a mistrial is reversed; a mistrial is ordered; defendant’s guilty plea is set aside; and the case is remanded for further proceedings.
REVERSED AND REMANDED.
DOMENGEAUX, J., dissents and assigns reasons.
DOMENGEAUX, Judge,
dissenting.
The majority correctly points out that an impermissibly suggestive identification does not necessarily constitute a violation of due process rights. Such an identification procedure must create a likelihood of misidentification before a due process violation will be found. State v. Guillot, supra.
I do not believe the facts herein indicate a substantial likelihood of misidentification. The five factors set forth in Neil v. Big-gers, supra, and discussed by the majority, in my opinion weigh heavily in favor of a correct and trustworthy identification. As the majority admits, the victim had an excellent opportunity to view the assailant at the time of the robbery. The victim's attention was focused solely on the assailant. His description to the police, while not particularly thorough, was adequate, and he gave a positive identification at the time of trial. Only the length of time between the crime and the identification indicates the potential for misidentification.
After weighing all of the factors, I find no substantial likelihood of misidentification. The conviction should be affirmed. Consequently, I respectfully dissent.