NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 KA 0121

STATE OF LOUISIANA

VERSUS

BRIAN HENRY PITTMAN

DATE OF JUDGMENT:     SEP 2 7 2019

ON APPEAL FROM THE TWENTY SECOND JUDICIAL DISTRICT COURT
NUMBER 584864, DIVISION C, PARISH OF ST. TAMMANY
STATE OF LOUISIANA

HONORABLE RICHARD A. SWARTZ, JUDGE

* * * * * *

Warren L. Montgomery
District Attorney
Matthew Caplan
Assistant District Attorney
Covington, Louisiana

Counsel for Appellee
State of Louisiana

Prentice L. White
Baton Rouge, Louisiana

Counsel for Defendant-Appellant
Brian Henry Pittman

Brian Pittman

Counsel for Defendant-Appellant
Pro se

* * * * * *

BEFORE: MCDONALD, THERIOT, AND CHUTZ, JJ.

Disposition: CONVICTIONS AND SENTENCES AFFIRMED; APPELLATE COUNSEL'S
MOTION TO WITHDRAW GRANTED.

**CHUTZ, J.**

The defendant, Brian Henry Pittman, was charged by bill of information on count one with aggravated battery, a violation of La. R.S. 14:34, on count two with attempted armed robbery, a violation of La. R.S. 14:64 and La. R.S. 14:27, and on count three with simple burglary of an inhabited dwelling, a violation of La. R.S. 14:62.2. He pled not guilty on each count. After a trial by jury, he was unanimously found guilty as charged on each count. The trial court denied the defendant's motions for postverdict judgment of acquittal and a new trial. After admitting to the allegations of a habitual offender bill of information, the defendant was adjudicated a second felony habitual offender as to each count.[1] The trial court sentenced the defendant on count one to ten years imprisonment at hard labor, on count two to twenty-five years imprisonment at hard labor, and on count three to ten years imprisonment at hard labor. The trial court further ordered that the sentences be served without the benefit of probation or suspension of sentence and that they run concurrently. Contending that there are no non-frivolous issues upon which to support the appeal, appellate counsel filed a brief raising no assignments of error.[2] The defendant filed a pro se brief with three assignments of error asserting: (1) the photographic lineup was unduly suggestive; (2) demonstrative evidence was improperly admitted; (3) and he received ineffective assistance of counsel. For the following reasons, we affirm the convictions and sentences and grant appellate counsel's motion to withdraw.

---

[1] The trial court did not sentence the defendant until after he was adjudicated a second felony habitual offender.

[2] Appellate counsel merely asks this court to determine whether the record reveals error patent such that the convictions or sentences should be reversed.

## FACTS

On March 29, 2015, around 6:00 p.m., Reed Umberger (the victim) was on his back patio grilling food at his Slidell residence when he was approached by the perpetrator, a male subject, who came from the street that ran along the left side of Umberger's property. As the perpetrator called out to get Umberger's attention, he walked quickly towards Umberger. Umberger, who did not know the perpetrator and did not want to talk to him, proceeded to enter into his residence to get a plate for the grilled food.

When he came back outside, the perpetrator was on his patio. The perpetrator stated that he was lost and needed directions to get back to a main street. Umberger provided the perpetrator with directions to the interstate and the nearest main street, hoping he would then leave. However, the perpetrator kept repeating his request for directions. When Umberger looked down at the grill, the perpetrator forcefully struck him in the face, causing Umberger to be momentarily stunned. Umberger felt blood dripping down his face, as he regained his focus. At that point, he noticed that the perpetrator had an open, black pocket knife in his hand. The perpetrator stated, "Give me money." Umberger told the perpetrator to leave, but he refused to do so. Umberger ran from his backyard, through his house to the front door, and to his neighbor's house. He told his neighbor that he had been attacked and asked her to call the police.

The police and an ambulance arrived and Umberger was taken to the hospital where he received stitches for the injury to his face. The police discovered bottles of prescription medicine belonging to Umberger in the field behind his backyard, leading the police to conclude that the perpetrator had entered Umberger's residence after Umberger fled to his neighbor's residence for assistance. The police also seized a cap believed to have been left at the scene by the perpetrator. DNA samples from the cap were uploaded into the Combined

3

DNA Index System (CODIS), and a match notification was generated identifying the defendant.

The police developed a photographic lineup that included a photograph of the defendant and showed the lineup to Umberger, who identified the defendant as the attacker. On July 11, 2016, after being advised of his *Miranda*[3] rights and signing a waiver of rights form, the defendant confessed during a police interview.[4] DNA swabs collected from the defendant at the time of the interview were sent to the St. Tammany Parish Coroner's Office for scientific analysis. According to Tara Brown Johnson, a forensic DNA analyst at the St. Tammany Parish Coroner's Office, the lab tests, in part, showed that the defendant's DNA was consistent with the major donor of a DNA sample collected from the cap. At trial, Umberger identified the defendant in court and identified the cap as the one worn by the defendant at the time of the incident.

## DISCUSSION

Appellate counsel has filed a brief containing no assignments of error and a motion to withdraw. In the brief and motion to withdraw, referencing the procedures outlined in *State v. Jyles*, 96-2669 (La. 12/12/97), 704 So.2d 241 (per curiam), appellate counsel indicated that after a conscientious and thorough review of the record, he could find no non-frivolous issues to raise on appeal, and could find no ruling of the trial court that arguably supports the appeal. See *Anders v.*

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

[4] The lead detective, Detective Matt Vasquez of the St. Tammany Parish Sheriff's Office (STPSO), took notes as he conducted a recorded interview of the defendant. After the interview, Detective Vasquez reviewed the notes with the defendant. The defendant was allowed to read the notes, and the defendant signed the bottom of the one-page handwritten document relaying his confession. The equipment malfunctioned during the recording of the interview, so the recording consists of video with no accompanying audio. At the motion to suppress hearing, the defendant testified that he did not know how to read or write. While he admitted that he had an altercation with the victim, he stated that there was "no robbery" and denied entering the victim's house. He further maintained that Detective Vasquez's handwritten notes omitted pertinent facts, including his claim that the victim knew him before the incident.

4

*California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *State v. Benjamin*, 573 So.2d 528, 529-31 (La. App. 4th Cir. 1990).

In *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400, the United States Supreme Court discussed how an appellate court should proceed when, upon conscientious review of a case, counsel determines an appeal would be wholly frivolous. In *Jyles*, 704 So.2d at 241-42, the Louisiana Supreme Court approved the procedures outlined in *Benjamin*, 573 So.2d at 529-31, which set forth a procedure for appellate counsel to follow to comply with *Anders*. An appellate counsel must review not only the procedural history of the case and the evidence presented at trial, but must also provide "a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place." *Jyles*, 704 So.2d at 242 (quoting *State v. Mouton*, 95-0981 (La. 4/28/95), 653 So.2d 1176, 1177 (per curiam)).

When conducting a review for compliance with *Anders*, an appellate court must conduct an independent review of the record to determine whether the appeal is wholly frivolous. *State v. Dyke*, 2017-1303 (La. App. 1st Cir. 2/27/18), 244 So.3d 3, 6, writ denied, 2018-0622 (La. 2/18/19), 266 So.3d 285; *State v. Thomas*, 2012–0177 (La. App. 1st Cir. 12/28/12), 112 So.3d 875, 878 (en banc). Herein, appellate counsel has complied with all the requirements necessary to file an *Anders* brief. Appellate counsel has detailed the procedural history, the facts of the case, and the sentencing in this case. Further, appellate counsel certifies that the defendant was served with a copy of the *Anders* brief. Appellate counsel's motion to withdraw notes the defendant has been notified of the motion to withdraw and his right to file a pro se brief on his own behalf. As noted, the defendant filed a pro se brief asserting three assignments of error.

5

**Photographic Identification**

In his pro se brief, the defendant first contends that he was denied a fair trial because the photographic lineup was unduly suggestive for failure to include a photograph of Aaron Cowart, a person of interest in the investigation of this case. At the outset, we note that the defendant did not make this argument in his motion to suppress the identification or at the hearing on the motion to suppress. Louisiana courts have long held a defendant may not raise new grounds for suppressing evidence on appeal that he did not raise at the trial court in a motion to suppress. The only exception to this rule is if the defendant or his counsel was unaware of the evidence or the ground of the motion, or the failure was otherwise excusable. *State v. Montejo*, 2006-1807 (La. 5/11/10), 40 So.3d 952, 967, cert. denied, 562 U.S. 1082, 131 S.Ct. 656, 178 L.Ed.2d 513 (2010); see La. C.Cr.P. art. 841 (a new basis for an objection cannot be raised for the first time on appeal).[5]

Moreover, the defendant's argument that a photograph of a prior suspect should have been included in the photo lineup is not supported in the jurisprudence. A lineup is suggestive if it unduly focuses a witness's attention on the suspect. See *State v. Johnson*, 2000-0680 (La. App. 1st Cir. 12/22/00), 775 So.2d 670, 677, writ denied, 2002-1368 (La. 5/30/03), 845 So.2d 1066. In *State v. Lee*, 35,333 (La. App. 2d Cir. 1/23/02), 807 So.2d 359, 364, writ denied, 2002-0644 (La. 1/31/03), 836 So.2d 60, the court rejected the defendant's argument that a lineup was unduly suggestive due to the absence of photos of other suspects with

---

[5] Herein, the motion to suppress the identification simply states that the identification was "improper and unconstitutional." At the hearing, the defense counsel argued that the lineup was suggestive because the victim was prejudiced to believe that someone in the lineup was the perpetrator and that the victim was inclined to pick the defendant since he knew the defendant. The defendant appears to argue in his pro se brief that there was a non-disclosure or late disclosure by the State in regards to the referenced suspect or person of interest. However, we note that at the hearing on the motion to suppress, the defense attorney questioned Detective Vasquez regarding a previous suspect and the absence of a photograph of that person in the lineup, and was, thus, aware of the issue. A defendant must assert all grounds for suppressing the evidence of which either defendant or defense counsel were aware. *Montejo*, 40 So.3d at 980; see La. C.Cr.P. art. 703(E)(1).

the same nickname as the defendant therein. Similarly, in *State v. George*, 570 So.2d 46 (La. App. 5th Cir. 1990), the court found that the fact that another suspect was not included in the lineup did not make the lineup unduly suggestive. As the court specifically held, "[t]he fact that another possible suspect was not included in the photo array does not warrant suppression on the grounds of suggestiveness." *George*, 570 So.2d at 49.

In support of his argument, the defendant relies on *State v. Swayze*, 554 So.2d 249 (La. App. 3d Cir. 1989). In *Swayze*, the armed robbery victim revealed under cross-examination that on the day of the trial, which was seventeen months after the crime was committed, the district attorney showed him a single photograph of a man, whom he identified as the assailant. The photograph had been placed on a desk with other case evidence, including a layout of the store where the defendant had been accused of committing the robbery. *Id.*, 554 So.2d at 251. Later that day, at trial, the victim made an in-court identification of the defendant as the assailant and as the person in the picture that he had been shown. *Id.* The victim's in-court identification of the defendant was held to be reversible error due to an impermissibly suggestive out-of-court photographic identification procedure that created a substantial likelihood of misidentification in that case. *Id.* 554 So.2d at 253. In particular, the court noted that the single photograph was provided to the victim "under circumstances that would facilitate his associating the person in the photograph with the crime in question." *Id.*, 554 So.2d at 251.

The instant case is distinguishable from *Swayze*. In this case, the defendant's photo was included in a six-photograph lineup. According to Detective Timothy Crabtree, the page of photographs was placed in an envelope and presented to the victim with instructions that he did not have to pick anyone, but to look at all of the photos. The victim opened the envelope, looked at all of the photographs, and immediately chose the fifth image, the photograph of the

defendant. Detective Crabtree then asked the victim how he recognized the individual, and he stated that the individual was the person who committed the battery upon him at his house while he was grilling. Detective Crabtree denied providing the victim with any clues, hints, or incentives in regards to his selection.

After viewing the lineup and carefully considering the testimony presented at the hearing and at trial concerning the lineup photos and how the identification was conducted, we discern no suggestiveness in the photographs or the procedure used for conducting the lineup.[6] Accordingly, pro se assignment of error number one is without merit.

**Demonstrative Evidence/Ineffective Assistance of Counsel**

In pro se assignment of error number two, the defendant challenges the admission of the Chicago Bulls cap that was identified as the hat worn by the defendant at the time of the offense. The defendant specifically argues that the police tampered with or moved the cap from its original location before photographing it. He argues that the cap should not have been admitted into evidence, due to improper police conduct in tampering with the evidence, and contends that the admission of the evidence resulted in an unjust trial. Since in pro se assignment of error number three he raises the ineffective assistance of counsel based on a lack of an objection, the defendant appears to concede that his counsel did not object to the admission of the cap at trial.[7]

As noted, the record does not reflect a contemporaneous objection to preserve the above issue for appellate review. See La. C.Cr.P. art. 841(A); La.

---

[6] At the suppression hearing and at trial, Detective Crabtree testified that the other photos selected were generated by a computer program based on similar characteristics to the subject.

[7] We note that the defendant did not brief pro se assignment of error number three or include any law on ineffective assistance of counsel in his argument in support of the second pro se assignment of error. Thus, arguably, pro se assignment of error number three should be considered abandoned. See La. Uniform Rules—Courts of Appeal, Rule 2-12.4(B)(4). However, as the grounds for his ineffective assistance of counsel argument is presented in pro se assignment of error number two, this court will combine and address both assignments of error.

8

C.E. art. 103(A)(1). Nonetheless, this issue will also be addressed in the context of the defendant's ineffective assistance of counsel claim raised in the third pro se assignment of error. See *State v. Patton*, 2010-1841 (La. App. 1st Cir. 6/10/11), 68 So.3d 1209, 1216-17.

As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court than on appeal. This is because post-conviction relief provides the opportunity for a full evidentiary hearing under La. C.Cr.P. art. 930. However, when the record is sufficient, this court may resolve this issue on direct appeal in the interest of judicial economy. *Id.*, 68 So.3d at 1217.

The claim of ineffective assistance of counsel is assessed under the two-part test from *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced him. Counsel's performance is deficient when it can be shown that he made errors so serious that he was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

To be admitted at trial, demonstrative evidence must be identified. This identification can be visual, that is, by testimony at trial that the object exhibited is the one related to the case. Alternatively, the evidence can be identified by a chain

9

of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered into evidence. *Patton*, 68 So.3d at 1222. The purpose of the chain-of-custody rule is to prevent evidence from being tampered with or from being lost. *State v. Gaudet*, 93-1641 (La. App. 1st Cir. 6/24/94), 638 So.2d 1216, 1223, writ denied, 94-1926 (La. 12/16/94), 648 So.2d 386. However, the law does not require that the evidence as to custody eliminate all possibility that the object has been altered. In order to introduce demonstrative evidence, threshold legal requirements are satisfied if the foundation laid establishes that it is more probable than not that the object is the one connected to the case. Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence, rather than to its admissibility. Ultimately, a chain of custody or connexity of the physical evidence is a factual matter for determination by the jury. *Patton*, 68 So.3d at 1222.

On direct examination, Deputy Brooks McGeever testified that while canvassing the area, he discovered the cap at issue in the victim's backyard. As the defendant details in his brief, on cross-examination, Deputy McGeever was questioned regarding the indication in his report that the cap was found on the kitchen floor in the home and used by the K-9 officer to assist in the attempt to track the perpetrator. On redirect examination, Deputy McGeever was shown a photograph of the cap and confirmed that it was the one recovered from the scene.

Based on our review of the connexity foundation laid, including the testimony by the police and the victim identifying the cap and the DNA evidence linking the cap to the defendant, the record supports a finding that it is more probable than not that the cap in evidence was connected to this case. Further, the record reveals no indication that the evidence was compromised in any way. Accordingly, the ineffective assistance of counsel claim likewise fails, as we find no performance deficiency or prejudice attributable to the lack of an objection

regarding the admission of the cap or the chain of custody. For the above reasons, the second and third pro se assignments of error are meritless.

This court has conducted an independent review of the entire record in this matter. We have found no reversible errors under La. C.Cr.P. art. 920(2). Furthermore, we conclude there are no non-frivolous issues or trial court rulings that arguably support this appeal. Accordingly, the defendant's convictions and sentences are affirmed. Appellate counsel's motion to withdraw, which has been held in abeyance pending the disposition in this matter, is hereby granted.

## DECREE

For these reasons, we affirm the convictions and sentences of defendant-appellant, Brian Henry Pittman. Additionally, we grant counsel's motion to withdraw.

**CONVICTIONS AND SENTENCES AFFIRMED; APPELLATE COUNSEL'S MOTION TO WITHDRAW GRANTED.**

11